Pamela Robinson McCLOUD,
Plaintiff-Appellant,

v.

Harold B. BRADLEY, Commissioner, Tennessee Department of Correction; Evans Fine, Director of Offender Classification, Tennessee Department of Correction; Charles Bass, Warden, Nashville Community Service Center; Larry Knolton, Correctional Officer, Nashville Community Service Center; and Unnamed and Unknown Defendants, Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section.

Nov. 7, 1986.

Application for Permission to Appeal Denied by Supreme Court Feb. 2, 1987.

Robert L. DeLaney, Passino and DeLaney, Nashville, for plaintiff-appellant.

Ann Lacy Johns, Asst. Atty. Gen., and W.J. Michael Cody, Atty. Gen. and Reporter, Nashville, for defendants-appellees.

## OPINION

TODD, Presiding Judge, Middle Section.

The plaintiff, Pamela Robinson McCloud, has appealed from the dismissal of her suit

for failure to state a claim for which relief can be granted.

A motion to dismiss for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under the former practice, and is a test of the sufficiency of the leading pleading. *Holloway v. Putnam County*, Tenn.1976, 534 S.W.2d 292; *Cornprobst v. Sloan*, Tenn.1975, 528 S.W.2d 188.

Plaintiff filed a complaint, an amended complaint and a second amended complaint. Rather than attempt to summarize the final version of plaintiff's complaint, it is deemed expedient to quote plaintiff's brief as follows:

> On December 13, 1983, plaintiff filed the complaint in the present case, bringing suit against various State officials employed in the Tennessee Department of Correction for acts allegedly committed by them in classifying Robert L. Smith to the work release and educational release programs. The complaint named defendants who were employed at various levels of decision making in the classifying process. Plaintiff has alleged that defendants Harold B. Bradley, Evans Fine and others in the central office of the Tennessee Department of Correction, who were involved at the policy-making level of the classification system, failed or refused to correct known deficiencies in this system, and that this constituted reckless and grossly negligent actions.

> Plaintiff also alleged that all of the defendants' failures to follow policies and procedures established by the Tennessee Department of Correction in classifying inmates for minimum security status constituted reckless, malicious and grossly negligent acts. Plaintiff further alleges that all the defendants knew, or should have known, that Robert Smith's actions were inconsistent with those of an inmate to be classified to minimum security and that the failure of the defendants to protect the public from this dangerous individual constituted reckless, malicious and grossly negligent acts.

> Finally, plaintiff alleged that the grossly negligent actions of the defendants were the proximate cause of the plaintiff's rape and accompanying physical and mental injury.

> . . . .

> Plaintiff filed an amended complaint on December 23, 1982, including South Central Bell and additional State officials as defendants. On December 30, 1982, plaintiff filed a second amended complaint, deleting South Central Bell as a defendant. On August 28, 1985, plaintiff filed an amended complaint denominated Second Amended Complaint, adding factual allegations as paragraphs 27 and 28.

Since plaintiff's brief does not elucidate the contents of paragraphs 27 and 28, they are quoted verbatim as follows:

> 27. Further it is alleged that one of the defendants in this action, John Griggs, knew by way of information from a Chaplain at the Tennessee State Penitentiary, that Smith had engaged in either violent conduct or other conduct while incarcerated at the T.S.P., or the Community Release Center, which would have disqualified him for consideration as a candidate for work release. This information was called to the attention of Warden Jim Rose. However, it is stated on information and belief that, due to an inadequate investigation, Mr. Griggs' information was never confirmed. It is further stated on information and belief that Warden Rose was nonetheless aware of this information at the time Mr. Smith was incarcerated at the Community Release Center.

> 28. It is alleged on information and belief that, on December 25, 1981, Mr. Smith, along with a number of other inmates at the Nashville Community Release Center, was either released to go to work or on a furlough. In the event Mr. Smith was released to go to work, his assigned work place was closed for the holiday. It is alleged on information and belief that no personnel in the Department of Correction checked to determine whether his work place was open or closed. Alternatively, no Department of

Correction official verified or approved where Smith reported he was going to spend his Christmas furlough. Department of Correction officials, including the defendants, were aware that inmates from the Community Release Center frequently returned from work and furloughs late. In fact, they adopted a policy requiring the inmates to report if they were going to be late. However, the defendants made no effort to verify the tardiness excuse given by tardy inmates. In this case, Smith called in and probably spoke to Larry Knolton or one of the individuals Knolton was supervising on December 25, 1981. Smith told Knolton he was going to be late and also said why. Smith's excuse was false. He, in fact, was tardy because he was raping Pam McCloud, stealing her money and attempting to kill her.

Defendants' motion to dismiss was based upon:

1. Immunity from liability for the discretionary decisions made by them.

2. Failure to show a special duty of any defendant to plaintiff.

3. No liability of defendants on the basis of respondeat superior.

The Trial Judge initially entered an order of dismissal stating:

It is therefore necessary that there be no liability for the negligent performance of discretionary acts by public officials ... done in the scope of the official's authority and without willfulness, malice or corruption.

The complaint under review does not state specific acts of willful wrongdoing, malice or corruption sufficient to avoid the motion to dismiss.

. . . .

The plaintiff is granted thirty days to amend so as to charge specific acts of willful wrongdoing, malice or corruption as to specific defendants.

The final judgment states that no further amendment has been made and that the suit is dismissed.

Plaintiff states the issues on appeal as follows:

I. Whether the defendant state officials are entitled to immunity from liability for allegedly reckless and malicious discretionary decisions made by them which resulted in harm to plaintiff.

II. Whether the plaintiff has stated a cause of action for which relief can be granted against the defendant state officials.

A. The defendant state officials owed plaintiff a duty to protect her from a prisoner with known dangerous propensities.

B. Plaintiff has sufficiently alleged the elements of proximate cause and foreseeability.

C. Plaintiff should not be required to plead malice with particularity.

Appellant concedes that public officers are generally entitled to quasi judicial immunity from liability for discretionary decisions made within the scope of their authority. However, appellant insists that such immunity does not apply where willfulness, malice or corruption enter into the decision. *State, ex rel Robertson v. Farmers State Bank,* 162 Tenn. (9 Smith) 499, 39 S.W.2d 281 (1931); *State, ex rel Butler v. Alexander,* Tenn.App.1982, 634 S.W.2d 596; *Buckner v. Carlton,* Tenn.App.1981, 623 S.W.2d 102.

Appellant insists that her complaint sufficiently alleges that the acts of defendants were willful, reckless, and malicious. It is seen that appellant has substituted the word, reckless, for the word corruption in the above stated rule of law.

Appellant relies upon statements in the complaint to the effect that:

1. Robert L. Smith had a criminal history involving violent crimes and multiple rapes and had previously served a prison sentence.

2. Defendant Griggs had been informed by a prison chaplain that Smith had engaged in "violent activity or other activity" while in custody which disqualified him for work release. Griggs called this information to the attention of defendant, Rose, when Smith was considered for work release. Had the investigation of such infor-

mation been adequate, said violent conduct would have been exposed.

3. At the time Smith was placed on work release, "for practical" purposes, there was no system of classification in the Tennessee Department of Correction. If an adequate system of classification had existed, reasoned judgments could have been made regarding Smith's release instead of a mechanical release.

4. Smith was released to go to work on Christmas day without verifying that his place of employment was open on that day. It was not open.

5. Smith obtained permission to return to the Community Release Center late by calling and stating that he would be late. His offenses against plaintiff were committed after the regular time for his return.

Appellant insists that the defendants, individually and collectively, are responsible for the actions of Smith because their personal knowledge of Smith's prior behavior, gross inadequacies in the classification system, and checks on work assignments amount to willful, reckless and malicious conduct.

Within the general scheme of events set out in the complaint, it is conceivable that special and extreme circumstances might be such as to impute willfulness, malice or corruption to one or more of the defendants. However, the invitation and permission of the Trial Court to allege such special and extreme circumstances was not accepted or acted upon by plaintiff.

In *Swallows v. Western Electric Company, Inc.*, Tenn.1976, 543 S.W.2d 581, a suit for "outrageous conduct", the Supreme Court affirmed dismissal for failure to state a cause of action and said:

The Tennessee Rules of Civil Procedure, while simplifying and liberalizing pleading, do not relieve the plaintiff in a tort action of averring facts sufficient to show the existence of a duty owed by a defendant, a breach of the duty, and damages resulting therefrom. The complaint in this action is replete with conclusions couched in the language of Medlin, Supra, [*Medlin v. Allied Investment Co.*, 217 Tenn. 469, 398 S.W.2d 270 (1966)], but does not undertake to describe the substance and severity of the conduct ... which amounted to harassment.... And, as was pointed out in *Medlin* "It is not enough in an action of this kind to allege a legal conclusion; the actionable conduct should be set out in the (complaint)" ... This is so because the court has the burden of determining, in the first instance, whether the appellee's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery....

The present case is strongly analogous to *Swallows*. In *Swallows*, actions were alleged which ordinarily would not be actionable; but a right of action was asserted because of conclusionary allegations characterizing but not detailing the severity required to support a suit. In the present case, actions and omissions are alleged in general terms which would not ordinarily be actionable against a public official. Then, such actions and omissions are characterized as "willful, reckless and malicious conduct", but no facts are alleged which substantiate and establish "willful, reckless or malicious conduct".

As stated in *Swallows*, such circumstantial facts as would create an exception to the general rule must be stated with particularity in order to enable the trial and appellate court to determine in advance of trial whether the facts alleged support the exceptional action which the plaintiff proposes to pursue.

Appellant does not insist that any of the defendants were limited to ministerial performance of precisely regulated acts. It appears to be conceded that each act or omission complained of was discretionary in character.

In effect, plaintiff has alleged that those officials clothed with the discretion to devise, promulgate and administer a system of classification and regulation of custody of convicts have failed to devise, promulgate and administer an adequate system of classification and regulation of custody of convicts and that their failure to do so

amounts to "willful, reckless and malicious conduct".

■ Plaintiff apparently conceives that the cumulative failures of the various defendants in various degrees have contributed to and caused the injury of which she complains, so as to render each and all of the defendants liable to her. In an ordinary tort case, this might be a viable theory of recovery. However, in an action such as this requiring willful wrongdoing, malice or corruption, the liability of each defendant must be predicated upon the individual willful wrongdoing, malice or corruption of that particular defendant. The cumulative effect of the separate misfeasance or non feasance of more than one individual cannot be imputed to a single individual as willful, malicious or corrupt unless facts are alleged which impute a common intent to produce the willful, malicious or corrupt result. No fact showing such scheme or intent is alleged in this case.

■ The prisoner classification system and the work release system of Tennessee are clearly discretionary in creation and administration. T.C.A. §§ 41–21–202, 41–21–504. The discretionary nature of prisoner classification and implementation has been recognized in many authorities. *Jones v. Diamond* (5th C.C.A., 1979), 594 F.2d 997; cert. dism. 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Newman v. State of Alabama,* (5th C.C.A.1977), 559 F.2d 283; *Jones v. United States* (5th C.C.A.), 534 F.2d 53, cert. den. 429 U.S. 978, 97 S.Ct. 487, 50 L.Ed.2d 586 (1976).

Prison officials have broad discretion over all aspects of the operation of prisons. *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976).

Absent any allegation that any one of the defendants acted or failed to act in respect to a non-discretionary power or duty, it must be presumed that each of the acts or omissions complained of was within the discretionary power or duty and, therefore subject to the quasi judicial immunity of public administrative officials.

Appellant cites decisions from Arizona and Pennsylvania which appear to advocate a less protective rule of quasi judicial immunity. This Court is not authorized to ignore the clear, established rule in Tennessee in favor of some variation proposed by the courts of other states. Such a modification of Tennessee law is for our Supreme Court and not this Court.

Appellant argues, but cites no authority holding that State officials are responsible for the wrongful actions of their subordinates under the doctrine of respondeat superior. This Court is unaware of any such authority and no logical reason occurs to this Court why such a novel theory should be injected into the established law of this State.

■ Indeed, Tennessee authority negates any vicarious liability of a public official under the doctrine of respondeat superior. *Vance v. Hale,* 156 Tenn. (3 Smith) 389, 2 S.W.2d 94 (1928); *Hale v. Johnston,* 140 Tenn. 182, 203 S.W. 949 (1918); *Lunsford v. Johnston,* 132 Tenn. 615, 179 S.W. 151 (1915).

In summary, appellant's first issue is without merit because it was the burden of the plaintiff to state facts constituting willful, malicious or corrupt action or inaction on the part of each defendant individually and not collectively. This, plaintiff has failed to do, and her complaint is thereby rendered fatally defective.

In support of her second issue, plaintiff insists first that:

The defendant State Officials owed plaintiff a duty to protect her from a prisoner with known dangerous propensities.

Apparently, appellant challenges the Tennessee rule of exemption of discretionary acts of public officials absent willfulness, malice or corruption; for this Court is urged to follow a rule of liability for failure to exercise reasonable care. If such a radical change is to be made in Tennessee law, it must be made by the Supreme Court or the Legislature.

If a public employee violates a non-discretionary duty, he may, under proper circumstances be held liable; but there is no allegation that any particular defendant violated a non-discretionary duty. If, however, the act or omission represented an exercise of discretion conferred by law or valid regulation, then the manner of exercise of that discretion, absent willfulness, malice or corruption, is exempt from liability under the common law rule recognized in this and many other states. *Burg v. State,* 147 N.J.Super. 316, 371 A.2d 308 (1977); *Pate v. Alabama Board of Pardons and Paroles,* 409 F.Supp. 478 (D.C. Ala.1978) affd. 548 F.2d 354; *Siess v. McConnell,* 74 Mich.App. 613, 255 N.W.2d 2 (1977); *Cairl v. State,* Minn.1982, 323 N.W.2d 20; *Reiff v. Commonwealth,* 23 Pa.Cmwlth. 537, 354 A.2d 918 (1976); *Papenhausen v. Shoen,* Minn.1978, 268 N.W.2d 565; *Jarrett v. Wills,* 235 Or. 51, 383 P.2d 995 (1963); *Sherrill v. Wilson,* Mo.1983, 653 S.W.2d 661.

Appellant next argues in support of her second issue that she has sufficiently alleged the elements of proximate cause and foreseeability. In view of the clear failure to allege facts under which a public official could be held liable, it is deemed unnecessary to consider proximate cause and foreseeability which are pretermitted.

Finally, appellant insists that she should not be required to plead malice with particularity. This is simply a re-presentation of an issue fully discussed heretofore. This Court cannot accept the premise that, every time a public official makes a discretionary decision from which some harm might result, he incurs possible liability to the injured party. Every discretionary decision involves the balancing of conflicting interests. Good faith exercise of discretion must be protected from intimidation if discretion is to be a function of free government.

It is understandable that a victim of the abuse suffered by plaintiff should cry out for compensation from and retribution upon those supposedly responsible for the injury. However, outrage at the crime committed cannot be allowed to force the abandonment of principles which are necessary for the preservation of orderly government.

The judgment of the Trial Court is affirmed. Costs of this appeal are taxed against appellant. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

Affirmed and remanded.

LEWIS and CANTRELL, JJ., concur.