C. D. SWALLOWS, Appellant,

v.

WESTERN ELECTRIC COMPANY, INC.
and Pinkerton's, Inc., Appellees.

Supreme Court of Tennessee.

Nov. 15, 1976.

William P. Sutherland, Watkins, McGugin, McNeilly & Rowan, Nashville, for appellant.

J. G. Lackey, Jr., Stephenson & Lackey, Don R. Binkley, Gracey, Maddin, Cowan & Bird, Nashville, for appellees.

## OPINION

COOPER, Chief Justice.

C. D. Swallows filed an action in the Circuit Court for Davidson County, against his employer, Western Electric Company, Inc., and a detective agency, Pinkerton's, Inc., charging the defendants were guilty of "outrageous conduct" and "invasion of privacy," which caused the plaintiff to suffer severe physical and emotional harm. The defendants filed motions to dismiss, testing the sufficiency of the complaint, as amended. The trial judge then dismissed the action, holding that the complaint failed to state a cause of action on either of the theories advanced by Mr. Swallows.

We affirm.

The predicate for the action against appellees is set forth in the following paragraphs of the complaint, as amended:

5. On or about January 29, 1975, G. C. Hunt and L. W. Weis, Section Chief and Department Chief, respectively, for Western at its Nashville facility, received in their office mail certain envelopes, without return addresses, each of which contained an ace of spades. For reasons apparently sufficient and satisfactory unto themselves, Weis and Hunt, acting in their official capacities as Western employees, determined that these aces of spades were intended as threats upon their lives.

6. On that same day, Weis and Hunt, once again acting within their official capacity as Western employees, advised Swallows that he was the "number one suspect" in the mailing of the playing cards. Plaintiff avers that he immediately advised Weis and Hunt that not only had he not mailed the cards, but also that he had absolutely no knowledge whatsoever of their mailing, and further charges that even in the face of his denial, and even in the face of the fact that Weis and Hunt had absolutely no reason whatsoever to believe that Swallows was implicated in any way in the mailing of the playing cards, the said Weis and Hunt continued to harass him and accuse him.

7. Shortly thereafter, Weis and Hunt somehow managed to convince their superiors at Western that Swallows had in fact been guilty of mailing the playing cards. Thereafter, Western caused defendant Pinkerton's, which is engaged in the business of general security services, to investigate Swallows' background, his private life, and all other manner of things concerning Swallows in the most minute and personal detail. Swallows charges that although Western and Pinkerton's knew, or in the exercise of reasonable diligence and good judgment, should have known, that he had nothing to do with the mailing of the playing cards to Weis and Hunt, Western and Pinkerton's, acting by and through one D. M. Perrine, continued to harass and investigate him for a period of approximately six (6) months. Plaintiff avers that Western and Pinkerton's became so adamant in their harassment that Western even attempted to formally discipline him, without sufficient cause, and that such attempted discipline was eventually reproved by a Federal mediator under the terms and conditions of Western's master agreement with the Communication Workers of America, AFL–CIO, of which Swallows is a member.

8. Plaintiff avers that throughout the six (6) months period referred to herein, Weis and Hunt, acting in their official capacity, did everything within their power to make his time spent at his employment as miserable as possible. Weis, Hunt and Perrine made it plain to Swallows that it was their intention to "get him", and Weis and Hunt further made it plain to Swallows that it was their desire to see him no longer in the employ of Western, and that they would use all means at their disposal to see to it that end met with fruition.

The appellant also charged that the appellees had actual knowledge that appellant has suffered from mild emotional difficulties in the past and that they should have known that the conduct described above would have "a most deleterious effect upon [appellant's] emotional stability and well being," and that the actions of appellants, in fact, did cause appellant to suffer "the most grievous mental and emotional pain and suffering. . . ."

◼ Liability for the tort of "outrageous conduct" exists only where (1) the conduct of the defendants has been so outrageous in character, and so extreme in degree, as to be beyond the pale of decency, and to be regarded as atrocious and utterly intolerable in a civilized society, and (2) the conduct results in serious mental injury. *Medlin v. Allied Investment Co.*, 217 Tenn. 469, 398 S.W.2d 270 (1966).[1] " 'The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or

1. *See Johnson v. Woman's Hospital*, 527 S.W.2d 133 (Tenn.App.1975), for conduct which meets the test prescribed in *Medlin, supra*.

other trivialities.'" Restatement of Torts (2d), § 46, comment (d), quoted with approval in *Medlin, supra* 398 S.W.2d at page 274.

In *Martin v. Senators, Inc.*, 220 Tenn. 465, 418 S.W.2d 660 (1967), assuming the existence of the common law right of action for invasion of privacy, this court pointed out a condition engrafted on the action, in that:

> [L]iability (for invasion of privacy) exists only if the conduct is such that a defendant should have realized it would be offensive to persons of ordinary sensibilities; and that *it is only where the intrusion has gone beyond the limits of decency that liability accrues* . . .. (Emphasis supplied.)

The Tennessee Rules of Civil Procedure, while simplifying and liberalizing pleading, do not relieve the plaintiff in a tort action of the burden of averring facts sufficient to show the existence of a duty owed by the defendant, a breach of the duty, and damages resulting therefrom. The complaint in this action is replete with conclusions couched in the language of *Medlin, supra,* but does not undertake to describe the substance and severity of the conduct of appellee's employees which allegedly amounted to harassment, nor the substance and severity of the conduct of Pinkerton in its investigations, nor the actions of Western Electric in attempting to discipline appellant. And, as was pointed out in *Medlin*, "it is not enough in an action of this kind to allege a legal conclusion; the actionable conduct should be set out in the [complaint]," *supra* 398 S.W.2d at page 275. This is so because the court has the burden of determining, in the first instance, whether appellees' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether the conduct is such as to be classed as "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities," for which appellees would not be liable. *See* comments to § 46 of the Restatement of Torts, Second.

The judgment of the trial court dismissing appellant's suit for failure to state a cause of action is affirmed. Costs incident to the appeal are adjudged against the appellant and his surety.

FONES, HENRY, BROCK and HARBISON, JJ., concur.