Gerald M. SPARKS, Plaintiff-Appellant,

v.

The CHARACTER AND FITNESS COM-
MITTEE OF KENTUCKY; Junius Bea-
ver, Jr.; Tommy Bell; Grant Helman;
Bill Baird III; Judge Stuart Lampe;
Rosemary Puckett; Pat Gill, Defend-
ants-Appellees.

No. 85–5629.

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 15, 1986.

Decided May 11, 1987.

Rehearing and Rehearing En Banc
Denied June 16, 1987.

Gerald M. Sparks, pro se.

William A. Barth, John T. Ballantine (ar-
gued), Louisville, Ky., for defendants-appel-
lees.

Before ENGEL, KRUPANSKY and
RYAN, Circuit Judges.

RYAN, Circuit Judge.

Gerald Sparks appeals *pro se* the district
court's dismissal of his complaint against
the Kentucky Committee on Character and
Fitness, its members, two employees hired
by the Committee, one member of the
Board of Bar Examiners, and the Chief
Justice of the Kentucky Supreme Court.

The district court held that the defendants were entitled to absolute judicial, or quasi-judicial, immunity from liability in appellant's 42 U.S.C. § 1983 suit requesting monetary damages. We affirm.

## I

On March 1, 1985, Sparks filed a complaint in district court alleging § 1983 violations of his procedural and substantive due process rights, his equal protection rights, and his rights under the eighth amendment of the United States Constitution. He also alleged breach of contract, fraud and deceit.

Specifically, Sparks averred that in 1980, when he was first a candidate for admission to the Kentucky Bar, he was interviewed, pursuant to Kentucky Supreme Court Rule 2.040, by Junius J. Beaver, Jr., an associate member of the Committee. At the conclusion of the interview, Mr. Beaver addressed a letter to the Kentucky State Board of Bar Examiners stating that because Sparks was not possessed of the requisite character and moral fitness, he could not recommend that Sparks take the upcoming Kentucky Bar Examination.

Sparks contends that despite Mr. Beaver's adverse recommendation, of which Sparks had no knowledge, "the powers that be still allowed him to take the Kentucky Bar exam four times ... knowing full well that the plaintiff had been blackballed." Sparks failed the bar examination three times; his fourth examination was never graded.

On April 17, 1985, the district court dismissed the action against defendant Robert F. Stephens, Chief Justice of the Kentucky Supreme Court, holding that the Chief Justice was entitled to absolute immunity because consideration of an application for admission to the bar is a judicial act for which a judge cannot be held liable in damages. On June 25, 1985, the court dismissed the action against the remaining defendants, finding:

"The Kentucky Supreme Court has extensive authority over the Board of Bar Examiners and the Character and Fitness Committee. Their members are ap-
pointed by the Supreme Court and the Court must approve the rules and regulations promulgated by those members. *Supreme Court Rules* 2.000 & 2.040. In addition, the court directs which subjects are to be tested and the minimum score needed to pass the examination. *Supreme Court Rule* 2.090. Finally, the court retains the final authority to determine who will be admitted to practice law in the State. *Supreme Court Rule* 2.060."

The court concluded that the functions of the Board of Bar Examiners and the Committee relating to Sparks' application for admission to the bar "cannot be divorced from the actions of the Supreme Court of Kentucky" and these activities are also "clothed with judicial immunity." The court ordered Sparks' complaint dismissed.

## II

■ It is well-established that judges of courts of general jurisdiction are immune from liability for their judicial acts. *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871). Except for acts in the "clear absence" of jurisdiction, judicial immunity is absolute. *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *King v. Love*, 766 F.2d 962 (6th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 351, 88 L.Ed.2d 320 (1985).

■ While the defense of judicial immunity is very broad, it does not protect a judge in the performance of non-judicial acts. *Lynch v. Johnson*, 420 F.2d 818, 820 (6th Cir.1970). In *Sparkman*, the Supreme Court stated:

"The relevant cases demonstrate that the factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with judge in his judicial capacity."

435 U.S. at 362, 98 S.Ct. at 1107. In the present case, the district court determined that the act of evaluating an application for

admission to the state bar is judicial in nature.

The power to determine who should practice before the courts has been aptly summarized by Chief Justice Taney:

> "And it has been well settled, by the rules and practice of common-law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed."

*Ex parte Secombe*, 60 U.S. (19 How.) 9, 13, 15 L.Ed. 565 (1856). This power is not only exclusive; it is inherently judicial. *Simons v. Bellinger*, 643 F.2d 774, 780 (D.C.Cir. 1980). *Accord Louis v. Supreme Court of Nevada*, 490 F.Supp. 1174, 1182 (D.Nev. 1980); *Galahad v. Weinshienk*, 555 F.Supp. 1201, 1204 (D.Colo.1983). Moreover, in this case, the Kentucky Constitution charges the Kentucky Supreme Court with the duty to "govern admission to the bar and the discipline of members of the bar." Ky. Const. of 1891, § 116 (1976).

The court's exercise of its inherent power to choose its officers is substantially determinative of the character and quality of our entire judicial system, state and federal. Our system of justice depends, in substantial measure, upon the service of competent and qualified attorneys. The decision whether to admit or deny an applicant admission to the bar, and thus to determine the composition and quality of the bar, affects both the quality of justice in our courts and the public's perception of that quality. The decision is therefore integral to the very essence of the judicial process.

The inherently judicial nature of the governance of the bar admission process is not diminished by the fact that an overburdened state supreme court delegates the administration of part of its responsibility to authorized persons. The Kentucky Supreme Court retains the ultimate authority to determine who will be admitted to practice law in the State of Kentucky and who will not. Indeed, as his *pro se* brief indicates, Sparks was aware that the Kentucky Supreme Court had delegated its responsibilities in these matters to the Committee of Character and Fitness and the Board of Bar Examiners, and he does not question the validity of that delegation. Therefore, his expectations have clearly been satisfied. *Sparkman*, 435 U.S. at 362, 98 S.Ct. at 1107.

We hold that the act of considering an application for admission to the bar, particularly when that duty is imposed upon the judiciary by constitution, is a judicial act. When it is performed by a judge, he or she is entitled to absolute judicial immunity. Therefore, the district court was correct in dismissing the plaintiff's complaint against the Chief Justice of the Kentucky Supreme Court.

## III

The question that next arises is whether the remaining defendants, who are not judges, nevertheless enjoy immunity for their activities in this matter. The "nonjudicial" defendants are the Kentucky Committee of Character and Fitness, its members, two employees hired by the Committee, and one member of the Board of Bar Examiners. Absolute judicial immunity "attaches to public officials who perform quasi-judicial duties." *Campbell v. Patterson*, 724 F.2d 41, 43 (6th Cir.1983), *cert. denied*, 465 U.S. 1107, 104 S.Ct. 1613, 80 L.Ed.2d 142 (1984). It is "a general principle of the highest importance to the proper administration of justice that a judicial officer ... be free to act upon his own convictions, without apprehension of personal consequences to himself." *Sparkman*, 435 U.S. at 355, 98 S.Ct. at 1104. Public policy requires "absolute immunity ... for all persons—governmental or otherwise—who [are] integral parts of the judicial process." *Briscoe v. Lahue*, 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983). In *Campbell*, we held that Michigan's Attorney General, obligated by statute to perform duties of a quasi-judicial nature, enjoys absolute immunity even when the action taken is erroneous.

A survey of the case law reveals that public policy requires absolute immunity for public officials performing quasi-judicial functions in a number of circumstanc-

es. It has been granted to members of an attorney disciplinary committee, *Simons*, 643 F.2d at 780; to a state bar association conducting disciplinary proceedings, *Clark v. State of Washington*, 366 F.2d 678 (9th Cir.1966); to lawyers serving on a mediation panel, *Mills v. Killebrew*, 765 F.2d 69 (6th Cir.1985); to the court's clerk for acts within the scope of his quasi-judicial duties, *Denman v. Leedy*, 479 F.2d 1097 (6th Cir. 1973); to "friends of the court," *Johnson v. Granholm*, 662 F.2d 449 (6th Cir.1981), *cert. denied*, 457 U.S. 1120, 102 S.Ct. 2933, 73 L.Ed.2d 1332 (1982); and to prosecutors engaging in prosecutorial activity, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

In the present case, the district court determined that the Committee and Board of Bar Examiners were performing quasi-judicial functions. In reaching this decision, the court relied on *Hoover v. Ronwin*, 466 U.S. 558, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984). In *Hoover*, the plaintiffs, who had failed the Arizona Bar Examination, brought suit against the members of the Arizona Supreme Court Committee on Examinations and Admissions, alleging that the committee members had conspired to restrain trade in violation of the Sherman Act by artificially reducing the number of competing attorneys in Arizona. The Supreme Court determined that the actions of the committee members, in using a grading formula to determine admissions to the bar, could not be divorced from the actions of the Arizona Supreme Court. The Court noted that the members were appointed by the supreme court and the court "retained strict supervisory powers and ultimate full authority over its actions." *Id.* at 572, 104 S.Ct. at 1997. The Court concluded that the conduct challenged was "in reality that of the Arizona Supreme Court," and therefore, the committee members were absolutely immune from anti-trust liability under the doctrine of sovereign immunity announced in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). *Hoover*, 466 U.S. at 573, 104 S.Ct. at 1998.

Similarly, in the *Simons* case, two attorneys sued the members of the District of Columbia Court of Appeals Committee on Unauthorized Practice of Law. They alleged that the defendants maliciously harassed them during an illegal investigation of their law practice. The court concluded that the committee members' work was "functionally comparable to the work of judges.... they serve as an arm of the court and perform a function which traditionally belongs to the judiciary." 643 F.2d at 781. The court held that the members of the committee were entitled to absolute judicial immunity.

In this case, there can be no doubt that the functions of the Committee and Board of Bar Examiners are, at least, quasi-judicial. *Accord Childs v. Reynoldson*, 623 F.Supp. 135 (D.C. Iowa 1985). The acts complained of in this case were performed by the defendants in obedience to duties imposed upon them by the Kentucky Supreme Court which is charged under the Kentucky Constitution with the obligation to enact rules "govern[ing] admission to the bar and discipline of members of the bar." In response to this constitutional command, the Kentucky Supreme Court adopted Supreme Court Rule 2.000 creating the Board of Bar Examiners and describing its duties, and Rule 2.040 creating the Committee on Character and Fitness, determining its composition, and defining its duties. These rules require, in sum, that the respective committees, their members and staff personnel, act on behalf of the Kentucky Supreme Court in administering procedures for admission to the bar of Kentucky and in determining the character and fitness of applicants as a condition precedent to admission. In executing these duties, the committee members and staff personnel act under the direct supervision of the Kentucky Supreme Court and in its name. Their activities cannot be separated from the actions of the Supreme Court of Kentucky. The actions of the defendants in this case are, therefore, not only "functionally comparable" to judicial duties, they are the functional equivalent.

■ The act of considering an application to the bar is a judicial act. And it is no less a judicial act simply because it is performed by nonjudicial officers in whom the

responsibility for the performance of such duties is lawfully delegated by the judiciary. Therefore, those who perform this duty on behalf of the judiciary are entitled to the same judicial immunity as would be enjoyed by judicial officers performing the same act.

The decision of the district court is AFFIRMED.