Linda A. HAMPTON and Rose O. Howard, Plaintiffs–Appellants,

v.

TENNESSEE BOARD OF LAW EXAMINERS, jointly and severally, Katherine Darden, Wheeler Rosenbalm, Charles Burson, Valerius Sanford, Lewis Hagood, Joseph Tipton, Michael Whitaker, Rodney V. Ahles, Scott McGinness, Prince Chambliss, Ellen Vergos, other unknown examiners, Memphis State University's Cecil C. Humphreys School of Law, Thomas Carpenter, Claude Kaufman, Francis Sullivan, Daniel Wanat, Robert Banks, Nancy Barron, Defendants–Appellees.

Court of Appeals of Tennessee,
Western Section,
at Jackson.

Nov. 22, 1988.

Application for Permission to Appeal Denied by Supreme Court Feb. 27, 1989.

Linda A. Hampton, Memphis, pro se.

Rose O. Howard, Memphis, pro se.

W.J. Michael Cody, Atty. Gen. and Reporter and William E. Young, Asst. Atty. Gen., for defendants-appellees.

CRAWFORD, Judge.

Plaintiffs, Linda A. Hampton and Rose O. Howard, filed this suit in the Circuit Court of Shelby County against the defendants named in the caption seeking declaratory and injunctive relief and monetary damages. The complaint describes and identifies the parties as follows:

\* \* \* \* \* \*

2. Plaintiffs, Linda A. Hampton and Rose O. Howard, are citizens of the United States and residents of Memphis, Shelby County in the State of Tennessee. Plaintiffs were examinees on the July 1985, February 1986 and July 1986 bar examinations.

3. Defendants are citizens of the United States and residents of the State of Tennessee. Defendant, Tennessee Board of Law Examiners, is the state investigatory agency which is responsible for the certification of applicants to the Tennessee Supreme Court for admission to the Tennessee State Bar. Defendant, Katherine Darden, is the Administrator of the Board. Defendant, Valerius Sanford, is the president of the Board. Defendant, Charles Burson, is vice-president of the Board. Defendant, Wheeler Rosenbalm, is former vice-president of the Board. Defendants, Michael Whitaker, Lewis Hagood, Joseph Tipton, Rodney Ahles, W. Scott McGuinness, Prince Chambliss, and Ellen Vergos, are assistant examiners with the Board. Defendant, Claude Kaufman, is Dean of the Cecil C. Humphreys School of Law. Defendant, Francis Sullivan, is former Dean of the Cecil C. Humphreys School of Law. Defendant, Daniel Wanat, is former Dean of Cecil C. Humphreys School of Law. Defendant, Robert Banks, is a professor on staff at the law school. Defendant, Nancy Barron, is records secretary at the law school. Defendant, Thomas Carpenter, is president of the Memphis State University.

Plaintiffs allege as to the defendants, Board of Law Examiners, the individual members of the Board, and the adjunct examiners, as follows: That plaintiffs were failed by these defendants on the essay portion of the examinations, that the Board maintained no objective standards for determination of a passing or failing grade, and that in essence the competitive nature of the exam amounts to a fulfillment of quotas. They aver that they petitioned the Tennessee Supreme Court for writ of certiorari to seek review of the Board's action in denying them relief after the 1985 bar examination, and the proceeding was pending at the time they took the February, 1986 exam. They allege that in the taking of the subsequent examination, the defendants failed to accord them the anonymity provided by the rules of the Supreme Court and intentionally discriminated and retaliated against them. They aver that they were willfully and maliciously denied passing grades by the defendants.

As to Memphis State University and the individual defendants connected therewith, the complaint alleges that the defendant Board of Law Examiners conspired with the administration, faculty and staff of the school of law in determining who would be allowed to fill the "quota" of passing applicants, and further alleges that the law school recommended that the Board should not pass these plaintiffs on the examination. The complaint further avers that after plaintiffs failed the examination, they sought advice from defendant Wanat, then Dean of the law school, and that he, under the guise of helping them, attempted to steer them in the wrong direction in their efforts before the Board. They allege that defendant Banks, professor at the law school, while acting ostensibly as their friend and confidant, was in fact betraying their confidence to the Board and advising the Board against the best interest of plaintiffs. They allege that defendant Barron

provided grade certification on behalf of the law school.

Plaintiffs further contend as to the defendant Board and the individuals connected therewith that they were denied procedural due process and that these defendants' acts were in violation of 42 U.S.C. §§ 1983, 1985. They further aver that the establishment of a quota denies their right to equal protection under the U.S. Constitution and that Tennessee Supreme Court Rule 7 was violated by the defendants.

The complaint further alleges that the defendants, Board of Law Examiners, and the individuals connected therewith, intentionally used policies and procedures designed to pass white applicants and fail black applicants and that this constituted outrageous conduct which caused plaintiffs to suffer severe emotional distress. Plaintiffs also allege that they were induced to retake the bar examination by the misrepresentations of these defendants. They further aver that the individual defendants at Memphis State University fraudulently led them to believe that they were competent to pass the bar examination upon graduation when they knew that the basis for a determination of passing was racially motivated.

Defendants responded to the complaint by Motion to Dismiss pursuant to Tenn.R. Civ.P. Rule 12.02(1), lack of subject matter jurisdiction and Rule 12.02(6), failure to state a claim upon which relief can be granted, or alternatively for summary judgment, pursuant to Rule 56, Tennessee Rules of Civil Procedure.

The judgment of the trial court dismissed plaintiffs' complaint for the reasons set out in the court's memorandum opinion which provides:

The plaintiffs seek declaratory and injunctive relief, together with monetary damages, against the past and present members of the Board of Law Examiners, adjunct examiners, the Memphis State University Law School, and certain faculty members, to redress the asserted deprivation of their right to procedural due process and equal protection as guaranteed to them by the fourteenth amendment, and 42 USC 1983, 1985.

The past and present members of the Board of Law Examiners move for summary judgment upon the ground of absolute judicial immunity. They insist that the Board is a surrogate of the Supreme Court of Tennessee, and that its members possess judicial immunity. This argument is well taken. See, *Belmont v. Board,* 511 SW2d 461 (1974).

The defendant Memphis State University School of Law moves for summary judgment upon the ground of absolute immunity. This motion is well-taken; Memphis State is an arm of the State. The point is well-settled and beyond peradventure. *Applewhite v. M.S.U.,* 495 SW2d 190 (1973).

The remaining defendants are granted immunity by TCA 9–8–307(h).

In any event, as the State argues, if it may be said that the Act creating the Tennessee Claims Commission waived its immunity, (T.C.A. 9–8–307 et seq.) for wilful or malicious actions, the plaintiffs must seek redress before the Commission, and this Court is without subject matter jurisdiction.

The Motion for Summary Judgment is sustained upon all grounds.

Plaintiffs' brief sets out ten issues for review but we perceive the only real issues to be:

1. Whether the trial court erred in dismissing plaintiffs' complaint as to all defendants, and

2. Whether the trial court erred in not ruling on plaintiffs' motions for discovery.

We will consider the second issue first.

On December 8, 1986, plaintiffs filed two motions, each styled, "Plaintiffs' Motion for Discovery." We quote them in the order in which they appear in the record:

Comes now the Plaintiffs to move this court for discovery pursuant to Tennessee Supreme Court Rule 56.06 in order to further justify their opposition to the Defendants' Motion for Summary Judgment. In support of this motion Plaintiffs rely upon Argument IV of Plain-

tiffs' Response to defendants' Motion to Dismiss and/or for Summary Judgment to which this motion is attached and submitted affidavits.

\* \* \* \* \* \*

The aforenamed Plaintiffs move this court to grant discovery pursuant to Tennessee Rules of Civil Procedure 26 in order that they may prepare to try the factual issues in this cause.

■ The defendants' Motion to Dismiss or for Summary Judgment was filed November 6, 1986. We find nothing in the record to indicate that plaintiffs attempted to conduct any discovery procedure prior to the filing of the December 8, 1986 motion.

Discovery methods are established by Rule 26.01, Tennessee Rules of Civil Procedure, which provides:

> **Discovery Methods.**—Parties may obtain discovery by one or more of the following methods: depositions upon oral examination or written questions; written interrogatories; production of documents or things or permission to enter upon land or other property for inspection and other purposes; physical and mental examinations; and, requests for admission.

Subsequent rules establish the procedure for utilizing the various discovery methods, all of which require direct proceedings between the parties, through their counsel if applicable, without the intervention of the court. Court intervention is contemplated under the rules only when a party does not comply with the rules regarding discovery. Rule 37, Tennessee Rules of Civil Procedure, is titled "Failure to Make or Cooperate in Discovery: Sanctions," and establishes the procedure for compelling discovery if the party has failed to comply with the rules.

As we previously noted in the case at bar, the record does not indicate that plaintiffs ever attempted to conduct discovery as provided by the rules nor is there any failure on the part of the defendants to comply with established discovery procedures. Furthermore, the record does not reflect that plaintiffs ever attempted to bring before the court for a hearing their so-called "motions for discovery." There-

fore, on the record before us, we cannot say that the trial court erred in not considering plaintiffs' motion for discovery.

We will now consider the first issue.

## MEMPHIS STATE UNIVERSITY DEFENDANTS

Plaintiffs' complaint against Memphis State University's Cecil C. Humphreys School of Law seeks monetary damages for alleged conspiracy to prevent the plaintiffs from passing the bar examination ostensibly in violation of 42 U.S.C. §§ 1983, 1985(3) (1982) which provide:

> **§ 1983. Civil action for deprivation of rights**
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceedings for redress....
>
> **§ 1985(3) Depriving persons of rights or privileges.** If two or more persons in any State or Territory conspire, ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance or the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

The complaint also alleges that misrepresentations by this defendant led plaintiffs to believe that when they obtained a degree

from the law school they were qualified to pass the bar examination.

◼ Memphis State University is a state institution to which the doctrine of sovereign immunity applies. *Dunn v. W.F. Jameson & Sons, Inc.*, 569 S.W.2d 799 (Tenn.1978); *Applewhite v. Memphis State University*, 495 S.W.2d 190 (Tenn.1973). This defendant, as an arm of the state, is not a "person" under § 1983. *Kompara v. Board of Regents*, 548 F.Supp. 537 (M.D. Tenn.1982). The trial court correctly dismissed the case as to Memphis State University's Cecil C. Humphreys School of Law.

From our review of the complaint as it pertains to the individual defendants at Memphis State University, we find no allegations against defendants, Thomas Carpenter and Francis Sullivan. The only allegation as to defendant Barron is that she "provided grade certification on behalf of the law school." There is no statement of claim upon which relief can be granted against these three defendants, and the plaintiffs' suit against them was properly dismissed.

◼ The complaint as to the remaining individual defendants connected with Memphis State University, defendant Wanat and defendant Banks, allege acts that could be considered to be acts in their individual capacities, and thus cognizable in this proceeding. The complaint alleges that defendant Wanat attempted to thwart plaintiffs' efforts before the Board of Law Examiners and that defendant Banks was apparently betraying their confidences in working with the Board instead of with them. These defendants, in support of their motion for dismissal or for summary judgment, filed affidavits which specifically refute each and every allegation made against them by the plaintiffs.

Summary judgment is to be rendered by a trial court only when it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R.Civ.P. 56.03. In ruling on a motion for summary judgment, the trial court and the Court of Appeals must consider the matter in the same manner as a motion for a directed verdict made at the close of the plaintiff's proof, i.e., all the evidence must be viewed in the light most favorable to the opponent of the motion and all legitimate conclusions of fact must be drawn in favor of the opponent. It is only when there is no disputed issue of material fact that summary judgment should be granted by the trial court and sustained by the Court of Appeals. *Graves v. Anchor Wire Corp.*, 692 S.W.2d 420 (Tenn.App.1985); *Bennett v. Mid–South Terminals Corp.*, 660 S.W.2d 799 (Tenn.App.1983).

The record reflects no countervailing evidence produced in opposition to these defendants' affidavits. In *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn. 1978), Justice Harbison, now Chief Justice of our Supreme Court, said:

A motion for summary judgment goes to the merits of the litigation. One faced with such a motion may neither ignore it nor treat it lightly. As stated in Rule 56.05, T.R.C.P.:

"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

575 S.W.2d at 498.

Considering this record as a whole and giving every inference in favor of the plaintiffs, we are of the opinion that as to the allegations against defendants Wanat and Banks, there is no genuine issue as to any material fact, and summary judgment for these defendants was properly granted by the trial court.

## BOARD OF LAW EXAMINERS DEFENDANTS

◼ Relying on the doctrine of judicial immunity, the trial court dismissed the complaint as to the defendants Board of Law Examiners, the individual members of

the Board, and the individual assistants to the Board members. The allegations against these individual defendants concern the manner in which the rules of the Supreme Court pertaining to the bar examination were applied to these plaintiffs. Plaintiffs also allege that the individuals defamed plaintiffs by their publication that plaintiffs had failed the bar examination, that these individual defendants are guilty of outrageous conduct and that they made false representations to the plaintiffs inducing them to take the examination.

The Supreme Court of Tennessee has the inherent power to prescribe and administer rules pertaining to admission of attorneys to the practice of law. *Belmont v. Board of Law Examiners*, 511 S.W.2d 461 (Tenn. 1974). By act of the legislature, now codified as T.C.A. § 23–1–101 (Supp.1988), the State Board of Law Examiners was created as part of the judicial branch of government under the complete dominion and control of the Supreme Court.

In addition to its inherent power and authority to govern admission to the bar, the legislature specifically provided that: "The Supreme Court shall prescribe rules to regulate the admission of persons to practice law and providing for a uniform system of examinations, which shall govern and control admission to practice law, and to regulate such board in the performance of its duties." T.C.A. § 23–1–103 (1980). Under its power and authority the Supreme Court promulgated Rule 7 of the Rules of the Supreme Court which establishes a comprehensive system for admission to the Bar of Tennessee. Section 12.09 of Rule 7 specifically authorizes the Board, subject to the approval of the Court, to appoint attorneys as assistants to the Board to perform such duties as prescribed.

In *Sparks v. Character & Fitness Committee*, 818 F.2d 541 (6th Cir.1987), the Court had before it a suit by an unsuccessful applicant to the Kentucky Bar. Suit was filed against the Kentucky Committee on Character and Fitness, its members, two other employees hired by the committee, one member of the Board of Bar Examiners and the Chief Justice of the Kentucky Supreme Court. The plaintiff's complaint alleged constitutional violations similar to those alleged in the case at bar, and also alleged actions for breach of contract, fraud and deceit. All of the allegations were connected with plaintiff's failure to be admitted to the Kentucky Bar. The District Court dismissed plaintiff's complaint seeking monetary damages on the grounds of absolute judicial immunity or quasi-judicial immunity. The Sixth Circuit Court of Appeals first considered the action against the Chief Justice of the Kentucky Supreme Court and stated:

> The power to determine who should practice before the courts has been aptly summarized by Chief Justice Taney:
>
> "And it has been well settled, by the rules and practice of common-law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed."
>
> *Ex parte Secombe*, 60 U.S. (19 How.) 9, 13, 15 L.Ed. 565 (1856). This power is not only exclusive; it is inherently judicial. *Simons v. Bellinger*, 643 F.2d 774, 780 (D.C.Cir.1980). Accord *Louis v. Supreme Court of Nevada*, 490 F.Supp. 1174, 1182 (D.Nev.1980); *Galahad v. Weinshienk*, 555 F.Supp. 1201, 1204 (D.Colo.1983). Moreover, in this case, the Kentucky Constitution charges the Kentucky Supreme Court with the duty to "govern admission to the bar and the discipline of members of the bar." Ky. Const. of 1891, § 116 (1976).
>
> The court's exercise of its inherent power to choose its officers is substantially determinative of the character and quality of our entire judicial system, state and federal. Our system of justice depends, in substantial measure, upon the service of competent and qualified attorneys. The decision whether to admit or deny an applicant admission to the bar, and thus to determine the composition and quality of the bar, affects both the quality of justice in our courts and the public's perception of that quality. The decision is

therefore integral to the very essence of the judicial process.

\* \* \* \* \* \*

We hold that the action of considering an application for admission to the bar, particularly when that duty is imposed upon the judiciary by constitution, is a judicial act. When it is performed by a judge, he or she is entitled to absolute judicial immunity. Therefore, the district court was correct in dismissing the plaintiff's complaint against the Chief Justice of the Kentucky Supreme Court.

818 F.2d at 543.

The Court then considered the liability of the remaining defendants and noted that these individuals on the committee and the board of bar examiners were performing duties imposed upon them by the Kentucky Supreme Court and that they act under the direct supervision of the Kentucky Supreme Court. The Court then stated:

> The act of considering an application to the bar is a judicial act. And it is no less a judicial act simply because it is performed by nonjudicial officers in whom the responsibility for the performance of such duties is lawfully delegated by the judiciary. Therefore, those who perform this duty on behalf of the judiciary are entitled to the same judicial immunity as would be enjoyed by judicial officers performing the same act.

818 F.2d at 544-45.

Sparks filed a petition for writ of certiorari in the United States Supreme Court which was granted. —— U.S. ——, 108 S.Ct. 744, 98 L.Ed.2d 757 (1988). The judgment below was vacated and the case was remanded to the United States Court of Appeals for the Sixth Circuit for further consideration in light of the decision of *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

Upon remand, the Sixth Circuit again considered the case on the Supreme Court's mandate, and on reconsideration held that the opinion in *Forrester* "is entirely distinguishable from this case and, therefore, does not require that we change our previous decision." *Sparks v. Character & Fit-*

*ness Comm.,* 859 F.2d 428, 429 (6th Cir. 1988). The Court said:

> In *Forrester,* plaintiff brought a 42 U.S. C. § 1983 action against a state court judge, alleging that that she was demoted and later discharged from her position as a probation officer because of her sex, in violation of the Equal Protection Clause of the fourteenth amendment. Under Illinois law, the defendant judge had authority to hire and fire such officers at his discretion. The Supreme Court held that the judge was not protected from liability by absolute judicial immunity because it was "clear that Judge White was acting in an administrative capacity when he demoted and discharged Forrester." 484 U.S. at ——, 108 S.Ct. at 545, 98 L.Ed.2d at 566.

Id. at 432.

The Sixth Circuit commented:

> Thus, the Court in *Forrester* made clear that only "judicial acts" are protected by judicial immunity, and that administrative decisions, although "often crucial to the efficient operation of public institutions," such as the courts, are not protected by absolute immunity. 484 U.S. at ——, 108 S.Ct. at 545, 98 L.Ed.2d at 566....

> In *Forrester,* Justice O'Connor explained that the analytical key "in attempting to draw the line" between functions for which judicial immunity attaches and those for which it does not is the determination whether the questioned activities are "truly judicial acts" or "acts that simply happen to have been done by judges." It is the *nature* of the function involved that determines whether an act is "truly" judicial. (Emphasis in original).

> The question then is whether an "administrative" decision to hire or fire a court staff employee, action not essentially "judicial," as in *Forrester,* is the functional equivalent of the action of the justice in a state supreme court and their designees in considering the qualifications of an applicant for admission to the bar as in this case.

A careful examination of the *Forrester* [case] ... reveals that the nature of the function involved in determining qualifications for admission to the bar on the one hand, and hiring and firing court staff personnel ... on the other, are essentially different. The former is a judicial act, the latter ... [is] not.

\* \* \* \* \* \*

Finally, the power to determine eligibility for membership in the bar has historically been reposed exclusively in the courts. See *Ex parte Secombe, supra; Simons v. Bellinger, supra.* That is not to say that "because a judge acts within the scope of his authority, such ... decisions are brought within the court's 'jurisdiction' or converted into 'judicial acts'...." *Forrester*, 484 U.S. at ——, 108 S.Ct. at 546, 98 L.Ed.2d at 567. Some functions performed by courts are so inherently related to the essential functioning of the courts as to be traditionally regarded as judicial acts. Determining the composition of the bar is just such an historic and traditional function. The establishment of criteria for determining the intellectual competence, academic preparedness, and moral fitness of persons who petition the court for the privilege of undertaking the confidential trust of serving the court as one of its professional officers has always been a function confined to the courts themselves. It has been universally thought that the courts are best equipped to understand the requirements for adequate representation of lay persons before the courts and to identify the qualifications of those who would undertake such representation as the courts' officers. That inherent expertise, and the exercise of the power to apply it in admitting and rejecting candidates to the practice of law, functions rooted in tradition and history, are arguably as fundamental to the sound functioning of the judiciary as is the task of resolving the disputes such officers present.

We return, then, to the analytical key ... in *Forrester* for ... [determining] judicial immunity ...: whether the function in question is a "truly judicial act[ ]" or an "act[ ] that simply happen[s] to have been done by judges." Whatever argument might be made about the inherently "judicial" character of the function of determining the membership of the bar, it is manifest that whether analyzed from the perspective of judicial precedent, judicial expertise, history and tradition, or the nature of the act itself, determining the composition of the bar is clearly not a function, like hiring and firing administrative, clerical, and other court personnel that is or ever had been performed by anyone in the private sector or in other branches of government, and "simply happen[s] to have been done by judges."

*Id.* at 432–33, 434.

We approve the reasoning of the Court of Appeals for the Sixth Circuit in *Sparks*, and we find the position of the parties in that case not unlike the position of the parties in the case at bar. We previously noted that our Supreme Court has the inherent and statutory power to regulate the admission to the practice of law. The Board of Law Examiners is appointed by our Supreme Court to hold office at the discretion of the Supreme Court. T.C.A. § 23–1–101(a) (Supp.1988). The individual defendants are appointed by the Board under the direction of the Supreme Court to act as the Board directs. Rule 7, § 12.09. Therefore, we hold that these defendants have absolute judicial immunity for the acts complained of, and plaintiffs' suit was properly dismissed.

Furthermore, we note other valid reasons for dismissal of plaintiffs' suit. Section 13.02 of Rule 7, Rules of the Supreme Court, allows aggrieved parties to file a petition for relief with the Board of Law Examiners. A review of the Board's action on the petition is provided by Rule 7, § 14.01 which states:

Petition for Review.—Any person aggrieved by an action by the Board may petition this Court for a review thereof, as under the common law writ of certiorari. On the grant of the writ, the Administrator shall certify and forward to the Court a complete record of the pro-

ceedings before the Board in that matter. Any such petition must be filed within 60 days after the action complained of.

In *Petition of Tennessee Bar Association,* 539 S.W.2d 805 (Tenn.1976), the Court, speaking through Justice Fones, said:

> The Supreme Court of Tennessee has original and exclusive jurisdiction to promulgate its own Rules. Its rule making authority embraces the admission and supervision of members of the Bar of the State of Tennessee.
>
> ... No other court in Tennessee has jurisdiction to promulgate a Rule governing the licensing of attorneys, and no other Court in Tennessee has jurisdiction to review and change or void any Rule promulgated by this Court.

539 S.W.2d at 807.

In *Belmont v. Board of Law Examiners,* 511 S.W.2d 461 (Tenn.1974), the Supreme Court speaking of its rule governing admission to the bar, said:

> ... [T]his Court has the inherent power to prescribe and administer rules pertaining to the licensing and admission of attorneys and as a necessary corollary thereto, no other court in Tennessee can construe or determine the applicability of a rule used to implement that power. It results, therefore, if this Court has the inherent and original power to prescribe the rules, then this Court has the original power to review the action of the Board of Law Examiners in interpreting and applying them. (citations omitted).

511 S.W.2d at 462.

From the foregoing we conclude that the trial court had no subject matter jurisdiction of the claims for injunctive or monetary relief against the individual defendants connected with the Board of Law Examiners as they pertain to their actions in the application of the rules and procedures established for determining a passing or failing grade on the bar examination.

■ Plaintiffs also allege that they were defamed by the actions of these defendants in that the defendants published to the world that plaintiffs had failed the bar examination. However, it is conceded that the defendants did not publish the fact that the plaintiffs failed the examination, but merely did not include them in the list of those that passed the examination. In fact, plaintiffs did not pass the examinations; therefore, there was nothing untrue about the publication. For communications to be libelous, they must constitute a serious threat to plaintiffs' reputations and be factually false. *See Stones River Motors, Inc. v. Mid–South Publishing Co.,* 651 S.W.2d 713 (Tenn.App.1983). We fail to see how the failure to pass the bar examination is a serious threat to someone's reputation, and conclude that in addition to the other valid defenses, this allegation fails to state a claim upon which relief can be granted.

■ Plaintiffs also allege that the individual defendants were guilty of outrageous conduct causing them severe mental and emotional damage. Viewing the complaint as a whole, we find the allegations in this regard to be general and inconclusive and there is absolutely no allegation concerning the conduct of the individual defendants which caused the damages alleged by plaintiffs. In *Swallows v. Western Electric Co.,* 543 S.W.2d 581 (Tenn. 1976), the Supreme Court said:

> The Tennessee Rules of Civil Procedure, while simplifying and liberalizing pleading, do not relieve the plaintiff in a tort action of the burden of averring facts sufficient to show the existence of a duty owed by the defendant, a breach of the duty, and damages resulting therefrom. The complaint in this action is replete with conclusions couched in the language of *Medlin,* [*v. Allied Inv. Co.,* 217 Tenn. 469, 398 S.W.2d 270 (1966)] *supra,* but does not undertake to describe the substance and severity of the conduct of appellee's employees which allegedly amounted to harassment, nor the substance and severity of the conduct of Pinkerton in its investigations, nor the actions of Western Electric in attempting to discipline appellant. And, as was pointed out in *Medlin,* "it is not enough in an action of this kind to allege a legal conclusion; the actionable conduct

should be set out in the [complaint]," *supra*, 398 S.W.2d at page 275. This is so because the court has the burden of determining, in the first instance, whether appellees' conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether the conduct is such as to be classed as "mere insults, indignities, threats, annoyances, petty oppression, or other trivialities," for which appellees would not be liable. See comments to § 46 of the *Restatement of Torts, Second.*

543 S.W.2d at 583.

Therefore, under the holding of *Swallows,* clearly plaintiffs do not state a cause of action for outrageous conduct.

Plaintiffs also allege that they were induced to take the examinations by virtue of false representations that there were standards of minimum competency for the passing of the essay questions. There are no allegations with particularity concerning the alleged misrepresentations or any identification of the defendants that made the alleged misrepresentations. These allegations must be made with particularity. Tenn.R.Civ.P. 9. Plaintiffs fail to state a claim upon which relief can be granted.

After a complete review of this record, we are of the opinion that the trial court reached the right result, although in some respects for reasons different from those of this Court. This court will affirm a judgment correct in result, but rendered upon different, incomplete or erroneous grounds. *Hopkins v. Hopkins,* 572 S.W.2d 639 (Tenn.1978).

Therefore, the order of the trial court dismissing plaintiffs' complaint is affirmed, and costs of the appeal are assessed against the appellants.

HIGHERS and FARMER, JJ., concur.