**Glenn COFFEY and Diane Coffey, Plaintiffs,**

v.

**CHATTANOOGA–HAMILTON COUNTY HOSPITAL AUTHORITY, d/b/a Baroness Erlanger Medical Center, Shirley Brackett, individually and in her official capacity, Theresa Anderson, individually and in her official capacity, and James Coleman, individually and in his official capacity, Defendants.**

No. 1:95–CV–312.

United States District Court, E.D. Tennessee.

March 14, 1996.

Peter J. Alliman, III, Jennifer Tallent, Lee & Alliman, Madisonville, TN, for plaintiffs.

Carlos C. Smith, Christine Mabe Scott, J. Robin Rogers, Strang, Fletcher, Carriger, Walker, Hodge & Smith, Chattanooga, TN, for defendants.

## *MEMORANDUM*

COLLIER, District Judge.

Before the Court is the Motion for Partial Dismissal filed by Defendants Chattanooga–Hamilton County Hospital Authority, d/b/a Baroness Erlanger Medical Center ("EMC"), Shirley Brackett ("Brackett"), Theresa

Anderson ("Anderson"), and James Coleman ("Coleman") (Court File No. 5). Plaintiffs Glenn Coffey and Diane Coffey filed a Response (Court File No. 14). Defendants replied (Court File No. 15), to which Plaintiffs filed a pleading the Court will consider as a motion to amend the complaint (Court File No. 16).[1] Defendants' motion seeks the dismissal of the retaliatory discharge claims and the outrageous conduct claims.[2] For the following reasons, the Court will GRANT the motion for partial dismissal.

## I. *STANDARD OF REVIEW*

A motion to dismiss under *Fed. R.Civ.P.* 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.), *cert. denied,* 498 U.S. 867, 111 S.Ct. 182, 112 L.Ed.2d 145 (1990); *see also Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994). The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller,* 50 F.3d at 377. However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

---

1. Plaintiffs request the Court for leave to amend the complaint if the Court finds Defendants' argument regarding the claim of outrageous conduct meritorious.

2. Defendants also seek the dismissal of a claim of interference with Glenn Coffey's employment contract brought against EMC. Plaintiffs stipulate and admit they filed no such claim against EMC (*see* Court File No. 14, pp. 1–2). There being no such claim to dismiss, the Court will simply acknowledge Plaintiffs' stipulation and admission.

## II.  PERTINENT FACTS

Glenn Coffey worked at EMC as a registered respiratory therapist in the pulmonary lab, which the Complaint describes as a "high risk lab" (Court File No. 1, ¶ 11).  Anderson worked as a certified respiratory therapist in the lab, Brackett served as supervisor, and Coleman acted as director of the lab.  Coffey contends Anderson began causing problems among employees in the lab, exhibiting poor work habits and techniques, and perpetrating illegal activities soon after she arrived there in 1984.  Coffey states he reported Anderson's actions to his supervisors and other members of EMC management from her arrival through 4 October 1994, but the reports were either ignored or casually addressed.  He argues he had an ethical and legal duty to report her (*Id.* at ¶¶ 17–18).

Sometime in 1993, Coffey alleges all Defendants "entered into a tacit or express agreement to silence [his] complaints about Theresa Anderson through the use of various threats, intimidation, [and] harassment" (*Id.* at ¶ 20).  Moreover, he further alleges Brackett, Anderson, Coleman, and others "entered into a tacit or express agreement to improperly and maliciously attempt to induce the termination of [his] employment ... and to suppress or prevent [his] dissemination of the information regarding Anderson" (*Id.* at ¶ 21).  Coffey argues this alleged behavior should not "be tolerated in a civilized society" (*Id.* at ¶ 23) and did lead to his constructive discharge.

Coffey brings his retaliatory discharge claim specifically under *Tenn.Code Ann.* § 50–1–304, which proscribes the discharge or termination of an employee "solely for refusing to participate in, or for refusing to remain silent about, illegal activities."  He alleges Defendants' actions constitute outrageous conduct.  For both the retaliatory discharge and outrageous conduct claims, Cof-fey states he "suffered economic loss, medical and other expenses, physical injury, mental and emotional distress and damage to his reputation" (*Id.* at ¶¶ 33 and 43).

## III.  ANALYSIS

### A.  Tenn.Code Ann. § 50–1–304

■  Defendants argue EMC cannot be held liable under *Tenn.Code Ann.* § 50–1–304 because it has immunity under the Tennessee Governmental Tort Liability Act ("TGTLA"), *Tenn.Code Ann.* § 29–20–101 *et seq.*  A plaintiff bringing suit under *Tenn. Code Ann.* § 50–1–304(a) "shall have a cause of action against the employer for retaliatory discharge."  *Tenn.Code Ann.* § 50–1–304(c).  The parties do not contest EMC's status as a governmental entity falling within the purview of the TGTLA.  *See Tenn.Code Ann.* § 29–20–201(a) (stating the general rule that "all governmental entities shall be immune from suit....").[3]

■  The Court finds controlling the case-law cited by Defendants.[4]  In *Montgomery v. Mayor of City of Covington,* 778 S.W.2d 444 (Tenn.Ct.App.1988), the court stated:

> An action for retaliatory discharge is by its very nature an action based on the intent of the employer to discharge the employee for availing himself of the statutory remedy under the workers' compensation statutes.  Therefore this would not be a negligent act or omission and immunity would not be removed at all.  Thus the city enjoys complete immunity from this action.

*Id.* at 445 (noting the TGTLA "grants complete immunity to governmental entities," subject to inapplicable exceptions).  "[S]overeign immunity is a complete defense for a governmental entity to a retaliatory discharge claim."  *Williams v. Williamson*

---

3.  By analogy to 42 U.S.C. § 1983, a suit brought against an individual in his or her *official capacity* is the equivalent of a suit against the governmental entity itself.  *See Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir.1994).  Thus, the Court analyzes the retaliatory discharge claim against Anderson, Brackett, and Coleman in their official capacities in accordance with the claim against the EMC.

4.  The Court notes this case requires the application of Tennessee law.  The Court will apply the law of Tennessee as interpreted by the state's highest appellate court, which in this case is the Tennessee Court of Appeals, unless the Court is convinced that the Tennessee Supreme Court would rule differently.  *See Persian Galleries v. Transcontinental Ins. Co.,* 38 F.3d 253, 259 (6th Cir.1994) (citations omitted).

**1026**

*County Bd. of Educ.,* 890 S.W.2d 788, 790 (Tenn.Ct.App.1994).

Plaintiffs argue *Jenkins v. Loudon County,* 736 S.W.2d 603 (Tenn.1987) demands a different outcome. *Jenkins,* in fact, supports Defendants' contention. First, *Jenkins* addressed whether a claim brought against a governmental entity pursuant to a statute existing before enactment of the TGTLA survived when the statute expressly contained a waiver of immunity provision. *See id. generally* (discussing *Tenn.Code Ann.* §§ 8–8–301 through 8–8–303). The Tennessee Supreme Court

> conclude[d] that if a specific or special statute provides for a remedy and waiver of immunity for injuries that are expressly excluded from the operation of the GTLA, then those remedies would not be affected by the GTLA because they cannot conflict with the statutory scheme of the GTLA and are separate from it, regardless of whether these statutes were enacted before or after the GTLA.

*Id.* at 608. The court further announced "[w]here no other applicable waiver of immunity can be found, however, the general rule of immunity embodied in the GTLA would otherwise continue to apply to any causes of action or injuries excluded from the GTLA." *Id.* at 610. No such waiver of immunity can be found in *Tenn.Code Ann.* § 50–1–304. Second, a claim for "wrongful discharge," based upon the employer's intent, still falls within the reach of TGLTA and merits immunity for EMC. *See Gifford v. City of Gatlinburg,* 900 S.W.2d 293, 296 (Tenn.Ct. App.1995); *see also Jenkins,* 736 S.W.2d at 608 (noting the TGTLA excludes "intentional torts"); *Montgomery,* 778 S.W.2d at 445.

Plaintiffs also bring the retaliatory discharge claim against Anderson, Brackett, and Coleman as individuals. Defendants contend the clear language of *Tenn.Code Ann.* § 50–1–304 applies only to an *employer:* "Any employee terminated in violation of subsection (a) shall have a cause of action *against the employer* for retaliatory discharge...." *Tenn.Code Ann.* § 50–1–304(c) (emphasis added). Defendants also cite to *Williams,* which did not allow a retaliatory discharge claim against individual defendants. *See* 890 S.W.2d at 790. Plaintiffs summarily argue the remedial aspect of the statute, master and servant liability, and joint and several liability (*see* Court File No. 14, pp. 3–4). Neither party points to a definition of employer applicable to this statute.

■ The Court declines to ascribe liability to the individual Defendants for a retaliatory discharge claim brought under *Tenn.Code Ann.* § 50–1–304. First, neither party adequately defines "employer" in this retaliatory discharge context. Second, there does not appear to be a definition of employer specifically linked to the statute. Third, in the broad employer/employee context, there appear to be *several* different definitions of employer, none of which specifically applies to the statute. *See, e.g., Tenn.Code Ann.* §§ 50–1–601(1), 50–2–105(c)(2), 50–2–201(4), 50–3–103(5), 50–5–102(5), and 50–6–102(4). Given such a spectrum of definitions and the absence of a definition narrowly tailored to *Tenn.Code Ann.* § 50–1–304, the Court will not go where neither the Tennessee General Assembly nor the Tennessee courts have gone. Fourth, *Williams* does closely resemble the situation before the Court. Lastly, Plaintiffs have remaining a claim of tortious interference with contract against the individual Defendants.

**B. *Outrageous Conduct***

Plaintiffs also assert a claim of outrageous conduct against all Defendants. Tennessee courts describe such a claim as "an intentional or reckless infliction of severe emotional distress by means of extreme or outrageous conduct." *Moorhead v. J.C. Penney Co.,* 555 S.W.2d 713, 717 (Tenn.1977); *see also Gann v. Key,* 758 S.W.2d 538, 545 (Tenn.Ct.App. 1988); *Hill v. Hill,* No. 01A01–9210–CV–00432, 1993 Tenn.App. Lexis 547, at pp. 7–8, 1993 WL 312671 (Tenn.Ct.App. Aug. 13, 1993) (equating outrageous conduct with the intentional infliction of emotional distress). For the same reasoning applied above pertaining to the retaliatory discharge claim, the Court finds EMC has immunity regarding this claim. *See Gifford,* 900 S.W.2d at 296 (disallowing a "wrongful discharge" claim as an intentional tort); *see also Jenkins,* 736 S.W.2d at 608 (noting the TGTLA excludes

"intentional torts"); *Montgomery,* 778 S.W.2d at 445 (disallowing a retaliatory discharge claim as an intentional tort).[5]

 Moreover, the Court finds Plaintiffs actually fail to raise a claim of outrageous conduct, but **GRANTS** Plaintiffs the opportunity to reallege such a claim against the individual Defendants by amending the Complaint, if they choose to do so (*see* Court File No. 16). Tennessee courts have long held such a claim must meet strict standards. The alleged actions must be "extreme" and lead an average citizen to exclaim, "Outrageous!" *See generally Medlin v. Allied Investment Co.,* 398 S.W.2d 270 (Tenn.1966); *see also Swallows v. Western Elec. Co.,* 543 S.W.2d 581, 583 (Tenn.1976); *Hampton v. Tennessee Board of Law Examiners,* 770 S.W.2d 755 (Tenn.Ct.App.1988). Tennessee courts have also addressed situations similar to that before the Court and found there not to be a claim of outrageous conduct. *See Williams v. Tennessee In–Home Health Services, Inc.,* No. 84–369–II, 1 I.E.R.Cas. (BNA) 1754, 1985 WL 153664 (Tenn.Ct.App. April 26, 1985); *Watson v. Cleveland Chair Co.,* slip op., C.A. # 93, 1987 WL 18892 (Tenn.Ct.App. July 26, 1993), *remanded and appealed on other grounds,* slip op. C.A. # 113, 1987 WL 18892 (Tenn.Ct.App. October 27, 1987), *rev'd on other grounds,* 789 S.W.2d 538 (Tenn.1989). The Court finds the circumstances alleged by Plaintiffs do not rise to the level of outrageous conduct; however, the Court will allow Plaintiffs to amend their Complaint, if they so choose, to reallege such a claim against the individual Defendants only.

## IV. *CONCLUSION*

In accordance with the foregoing analysis, the Court will **GRANT** the motion for partial dismissal (Court File No. 5) as to the claims of retaliatory discharge under *Tenn.Code Ann.* § 50–1–304 brought against all Defendants and the claim of outrageous conduct brought against EMC, but will **DENY** the motion as to the outrageous conduct claim against the individual Defendants. The Court also will **GRANT** Plaintiffs' motion to amend complaint (Court File No. 16) as to

the outrageous conduct claim brought against Anderson, Brackett, and Coleman.

An Order will enter.

### *ORDER*

In accordance with the accompanying Memorandum, the Court **GRANTS** the motion for partial dismissal as to the retaliatory discharge claim under *Tenn.Code Ann.* § 50–1–304 brought against all Defendants and as to the outrageous conduct claim brought against Defendant Chattanooga–Hamilton County Hospital Authority, d/b/a Baroness Erlanger Medical Center ("EMC"). The Court **DENIES** the motion to dismiss as to the outrageous conduct claim brought against Theresa Anderson, Shirley Brackett, and James Coleman and **GRANTS** Plaintiffs the opportunity to amend their Complaint as to this claim only.

**SO ORDERED.**

**ENTER.**