**Paul E. HUMPHRIES, et al., Plaintiffs–Appellants,**

v.

**WEST END TERRACE, INC., Town & Country Realty Company, Ticor Title Insurance Company, and Sovran Bank/Central South, Defendants–Appellees.**

Court of Appeals of Tennessee, Western Section.

March 30, 1990.

Permission to Appeal Denied by Supreme Court July 16, 1990.

H. Frederick Humbrachet, Jr., Nashville, for defendants-appellees, Sovran Bank and Central South.

John H. Roe, Jr., and Kenneth R. Jones, Jr., Nashville, for defendant-appellee, Ticor Title Ins. Co.

Thomas E. Stewart, and Thomas M. Black, Madison, for plaintiffs-appellants.

CRAWFORD, Judge.

This is an appeal by plaintiffs from the order of the trial court dismissing plaintiffs' suit as to two of the four defendants for failure to state a claim upon which relief can be granted. The order was made final pursuant to Rule 54.02, Tennessee Rules of Civil Procedure, and plaintiffs appeal to this Court as an appeal of right under Rule 3(a) T.R.A.P.

The case involves the conversion of an apartment complex on White Bridge Road in Nashville into condominiums and the subsequent sale of those condominium units to individual purchasers.

Plaintiffs are 71 of these individual purchasers of condominium units. Suit was filed on February 25, 1988, after one of the plaintiffs attempted to sell a unit. It was at this point that the plaintiffs allegedly first learned that the underlying indebtedness made the property unmarketable. They sued West End Terrace, Inc., (Seller), Town & Country Realty Company (the real estate company that arranged the deal), and the appellees in this Court, Ticor Title Insurance Company & Sovran Bank/Central South.

The only issue before the Court is whether the trial court erred in granting the motions of defendants Ticor and Sovran to dismiss plaintiffs' complaint pursuant to Rule 12.02(6), Tenn.R.Civ.P., for failure to state a claim upon which relief can be granted.

A motion to dismiss pursuant to Rule 12.02(6), Tenn.R.Civ.P., for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure and, thus, is a test of the sufficiency of the leading pleading. *Cornpropst v. Sloan,* 528 S.W.2d 188, 190, 93 ALR3d 979 (Tenn. 1975). Such a motion admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action. *Cornpropst,* 528 S.W.2d at 190. A complaint should not be dismissed upon such a motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Fuerst v. Methodist Hospital South,* 566 S.W.2d 847, 848 (Tenn. 1978). In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court should construe the complaint liberally in favor of the plaintiff taking all of the allegations of fact therein as true. *Huckeby v. Spangler,* 521 S.W.2d 568, 571 (Tenn.1975).

The complaint, which seeks rescission and monetary damages, is 22 pages in length and contains 86 numbered paragraphs. There are ten exhibits to the complaint on which the causes of action are based. Plaintiffs make numerous allegations against the defendants generally without reference to any individual defendant. We will relate the substance of the complaint as necessary for an understanding of the case and will detail such specific allegations as we perceive to be made against these appellees.

In August, 1985, West End Terrace, Inc., purchased the apartment complex known as Capri Garden Apartments in order to convert the complex into a condominium development pursuant to the Tennessee Horizontal Property Act, T.C.A. § 66–27–101––123 (1982). The purchase and conversion was financed with a loan from Sovran in the amount of 5.1 million dollars secured by a wrap-around mortgage on the property. In September, 1985, West End Terrace, Inc., recorded its master deed in the Register's Office of Davidson County creating the West End Terrace Condominiums. West End Terrace, Inc., then started selling the units to individual purchasers pursuant to the purchase agreements in which the seller agreed to convey "good and marketable title ... subject to ... liens and other matters which the owner's insurance policy, to be provided buyer, shall insure against." The purchase agreements provided for a purchase price of $39,900 per unit financed by a mortgage on the unit to be retained by West End Terrace, Inc. Closings of the transactions involving the plaintiffs in this case took place in late September or early October, 1985, and in some instances a number of closings were held simultaneously in a large classroom. At closing, the documents were executed and each plaintiff-purchaser was furnished a warranty deed, which provided in part:

AND GRANTOR COVENANTS with the said Grantee that it is lawfully seized and possessed of said property, that it has a good right to convey it, and that the same is unencumbered except for the following: ... (12) such liens against

which Grantee's title insurer commits to insure Grantee from loss as provided in the title insurance policy given Grantee by Grantor.

Also at closing, the purchasers were provided with a title insurance commitment from Ticor which excepted the existing liens on the property in favor of the bank from coverage, but provided that Ticor's policy would insure the purchasers from loss suffered as a result of enforcement or attempted enforcement of the liens securing the indebtedness. The title policies eventually issued by Ticor insured against the unmarketability of title except if it arose as a result of these listed items of indebtedness. The policy affirmatively insured against loss or damage resulting from the enforcement or attempted enforcement of these items. Sovran issued a letter of credit, naming Ticor as beneficiary, as security for this affirmative insurance.

Within one year of the filing of this suit, one of the plaintiffs attempted to sell an individual unit and was advised of the pre-existing underlying mortgages when the prospective purchaser had the title examined in contemplation of closing the transaction. Plaintiffs allege that this was the first time they had knowledge of the property being encumbered by underlying mortgages in favor of Sovran or any other entity.

## THE COMPLAINT ALLEGATIONS AS TO DEFENDANT TICOR

### Tennessee Horizontal Property Act

■ The first allegation against Ticor concerns the Tennessee Horizontal Property Act, T.C.A. § 66–27–101 et seq. Plaintiffs assert that this Act prohibits the establishment of a horizontal property regime (condominium) upon property that is encumbered by pre-existing indebtedness. In support of this position, the plaintiffs quote T.C.A. § 66–27–104:

**Ownership of apartments.**—Once the property is submitted to the horizontal property regime, an apartment in the building may be individually conveyed and encumbered and may be the subject of ownership, possession or sale and of all types of juridic acts intervivos or mortis causa, as if it were sole and entirely independent of the other apartments in the building of which they form a part, and the corresponding individual titles and interest shall be recordable.

Assuming *arguendo* that such a prohibition exists and assuming that a right of action might arise from it, any cause of action resulting from the violation of that prohibition would be against the creator of the horizontal property regime. This complaint makes no allegation that Ticor was in any way involved in converting this apartment complex into condominiums. The complaint specifically avers that West End Terrace, Inc., purchased the apartment complex from White Bridge Road Associates, Inc., and that West End Terrace, Inc., recorded a master deed for the West End Terrace Condominiums. Without any allegation of Ticor's role in the purchase and conversion of this property into a condominium complex, there can be no cause of action against Ticor for the creation of a horizontal property regime on encumbered property.

■ Moreover, from our reading of the Tennessee Horizontal Property Act we fail to find language prohibiting the establishment of a horizontal property regime on encumbered property. Some states have such prohibitions, see Virginia Code Section 55–79.46; Cal.Bus.Prof.Code § 11013.1—11013.5, Ind.Code Ann. § 32–1–6–16, N.Y. Real Prop. Law § 339–r, and some states do not. See Ky.Rev.Stat. §§ 381.805–.990; Ark.Stat.Ann. §§ 18–13–101 through –120; and Miss.Code Ann. §§ 89–9–1 through –37. Without further guidance from the legislature, we decline to construe the Tennessee statute to prohibit the establishment of such a regime on encumbered property.

### Tennessee Consumer Protection Act

■ The plaintiffs also allege that the defendants violated the Tennessee Consumer Protection Act, T.C.A. § 47–18–101 et seq. The Consumer Protection Act de-

clares unlawful, various unfair or deceptive acts or practices which affect the conduct of any trade or business. T.C.A. § 47–18–104 (Supp.1989). Any person suffering a loss as a result of such acts or practices may bring an action for damages. T.C.A. § 47–18–109 (Supp.1989). The factual allegations pertaining to this claim are that the underlying indebtedness was misrepresented or inadequately disclosed. In the complaint, plaintiffs describe the closing on the sale as follows:

> Plaintiffs then closed the loan transaction and contract by attending, in some cases, an *en masse* closing held in a thirty-person classroom where the closing documents were presented for the first time. At closing, neither the master deed, warranty deed (a copy of which is attached hereto as Exhibit 4), deed of trust (a copy of which is attached hereto as exhibit 5), loan application (a copy of which is attached hereto as Exhibit 6), disclosure settlement statement (a copy of which is attached hereto as Exhibit 7), or any other document or muniment of title signed at closing contained any adequate, meaningful or full disclosure of the nature of the underlying mortgage indebtedness and blanket encumbrances applicable to the property. The warranty deed, as the last listed encumbrance, merely stated, "Such liens against which Grantee's title insuror commits to insure Grantee from loss as provided in the title insurance policy given Grantee by Grantor." ... At the closing, the only document which listed, and this for the first time, the actual mortgages, deeds of trust, wrap-around mortgages, and other indebtedness, was a photostatic copy of a commitment for title insurance (hereinafter "title commitment") (a copy of which is attached hereto as Exhibit 8) which did not bear the names of any Plaintiffs and was dated August 12, 1985 —several months prior to the date of the closings. Although Plaintiffs had access to this *blank* title commitment at closing, it is legally immaterial that the Plaintiffs had the chance to "discover the truth" at closing because they had been misled about the character of the transaction

and reasonable diligence did not require the purchaser to read a document which he or she did not sign and was not directed to at closing.

Factual allegations in the complaint establish that Ticor's sole involvement in the sale of these units was the furnishing of a title insurance commitment and later a title insurance policy. There are no allegations setting forth any particular fraudulent or deceptive act on the part of any agent or employee of Ticor. The circumstances constituting fraud must be stated with particularity. Rule 9.02, Tenn.R.Civ.P. See *Hampton v. Tennessee Board of Law Examiners*, 770 S.W.2d 755, 764 (Tenn.App. 1988). Giving plaintiffs' complaint the liberal construction required, plaintiffs have failed to allege any set of facts which, if proven, would entitle them to relief against Ticor pursuant to the terms of the Tennessee Consumer Protection Act.

### Title Insurance Law

Plaintiffs allege that Ticor violated T.C.A. § 56–35–104 by " 'insuring over' mortgage and other lien indebtedness." Apparently, plaintiffs are alleging that Ticor's insuring against any loss by virtue of the enforcement of the underlying mortgages is a guaranty, on the part of Ticor, of an obligation of another. From our reading of the Ticor policy we fail to find any language which constitutes such a guaranty. Ticor engages in the title insurance business, which is defined in T.C.A. § 56–35–102(a)(11) as: "insuring or guaranteeing of titles to real property and interest therein or the validity, accuracy or sufficiency of liens and encumbrances thereon...." The language of Ticor's policy does nothing more.

### Unmarketability

The plaintiffs also assert that Ticor is liable on the policy because of the unmarketability of the property. The complaint alleges that "Ticor is liable because the policies by their terms insure a loss occasioned by lack of marketability." Plaintiffs assert that Ticor's commitment to insure against loss occasioned by the en-

forcement or attempted enforcement of this underlying indebtedness amounted to insurance against lack of marketability. Plaintiffs assert that legal marketability was insured because Ticor did not "re-except" marketability from its commitment to affirmatively insure against loss occasioned by enforcement of the indebtedness.

Ticor's policy, attached as an exhibit to the complaint, states in pertinent part:

#### Policy of Title Insurance

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS CONTAINED IN SCHEDULE B AND THE PROVISIONS OF THE CONDITIONS AND STIPULATIONS HEREOF, TICOR TITLE INSURANCE COMPANY ... insures ... against loss or damage ... sustained or incurred by the insured by reason of:

\*     \*     \*     \*     \*     \*

4. Unmarketability of such title,

\*     \*     \*     \*     \*     \*

The policy lists, as exceptions in Schedule B, the various underlying mortgages and other encumbrances which are designated as items 2 through 18 of the special exceptions. The policy then states:

NOTE: Items under 2 through 18 above, are matters of record to which the estate of interest referred to herein is subject. Nonetheless, our policy will affirmatively insure the Insured against loss or damage resulting from the enforcement or attempted enforcement of said items under 2 through 18.

Language in a contract which happens to be technical or complex to the layman, does not render it ambiguous. *Bartlett v. Philip–Carey Manufacturing Co.*, 216 Tenn. 323, 330, 392 S.W.2d 325, 328 (1965). The court cannot, under the guise of construction, make a new and different contract for the parties. *United States Stove Corp. v. Aetna Life Ins. Co.*, 169 Tenn. 264, 267, 84 S.W.2d 582, 583 (1935). Title insurance policies are interpreted under the same rules of construction as other contracts. *Swanson v. Mid-South Title Ins. Corp.*, 692 S.W.2d 415,

419–20 (Tenn.App.1984). In the absence of fraud or mistake, a contract must be interpreted as written even though it contains terms which may be thought harsh and unjust. *E.O. Bailey & Co. v. Union Planters Title Guaranty Co.*, 33 Tenn. App. 439, 232 S.W.2d 309, 314 (1949). In construing contracts where there is no ambiguity it is the duty of the court to apply to the words used their usual, natural and ordinary meaning. *Ballard v. North American Life and Casualty*, 667 S.W.2d 79, 82 (Tenn.App.1983).

The complaint avers that plaintiffs "relied upon the generic feeling and assurance that title insurance insured them against any and all defects, marketability, documents being in order, pay offs made, and generally to be a clean transaction." They assert that, at the closing, their copy of the title insurance commitment was "buried in a stack of papers." These averments are inadequate to state a cause of action against Ticor. The allegations made by plaintiffs as to the meaning and interpretation of the policy of insurance attached as an exhibit to the complaint are not admitted by the motion to dismiss and the legal effect of such a policy is a question of law for the court. *Oman Const. Co. v. Tennessee Cent. Ry. Co.*, 212 Tenn. 556, 570, 370 S.W.2d 563, 569 (1963).

The allegations of the complaint notwithstanding, the plaintiffs received the coverage of title insurance exactly as stated in the policy. Ticor insured against unmarketability except if it arose as a result of the underlying indebtedness. With respect to that indebtedness, Ticor agreed to reimburse the plaintiffs for any loss suffered by them as a result of the enforcement or attempted enforcement of the mortgages, liens and other instruments comprising it. There are no allegations in the complaint that any agent or employee of Ticor led the plaintiffs to believe they would receive anything other than what they actually did receive. The complaint makes no claim against Ticor for losses from enforcement of the indebtedness and states no claim against Ticor with respect to unmarketability of the property.

Plaintiffs also allege that Ticor is liable for the bad faith penalty under T.C.A. § 56-7-105 for failure to pay plaintiff's claim within 60 days of demand. Obviously, without liability under the policy, an insurer cannot be liable for the penalty.

### Tort Allegations

The complaint makes general allegations against the defendants collectively that they were guilty of misrepresentations and nondisclosure or inadequate disclosure regarding the various encumbrances on the property when plaintiffs purchased their units. As we previously noted, the complaint fails to allege any particular facts concerning representations made by any agent or employee of Ticor. The substance of the complaint is that Ticor's involvement with plaintiffs consisted only of furnishing a title commitment followed by a title insurance policy. The allegations of the complaint concerning any alleged fraudulent conduct on the part of Ticor and Sovran are insufficient to comply with the requirements of Rule 9.02, Tenn.R.Civ.P., requiring particularity in the statements of fact constituting fraud. See *Hampton v. Tennessee Board of Law Examiners,* 770 S.W.2d 755 (Tenn.App.1988).

### THE COMPLAINT ALLEGATIONS AS TO DEFENDANT SOVRAN

The major factual allegations against Sovran are that Sovran provided financing for the developers to purchase the property and, at the request of the developers, provided a letter of credit in favor of Ticor as security for the title insurance Ticor provided. Because plaintiffs made the general allegations against defendants collectively concerning violations of the Tennessee Horizontal Property Act, the Title Insurance Law, and the Tennessee Consumer Protection Act, as well as general tort allegations, we must consider these allegations as applying to Sovran. After such consideration, we reach the conclusion that for the same reasons heretofore set out as to Ticor, these allegations do not state a claim or cause of action against Sovran upon which relief can be granted.

After reviewing the complaint as a whole, we believe the trial court succinctly and accurately summarized the effect of the allegations as to Sovran when it said: "Sovran Bank's involvement in this suit is not comprehensible."

### FINALITY OF JUDGMENT OF DISMISSAL

Plaintiffs also assert that the trial court erred in making the judgments of dismissal as to Ticor and Sovran final judgments pursuant to Rule 54.02, Tennessee Rules of Civil Procedure. They argue that it should not have been made final because there is a possibility that the prior rulings could be necessarily revised. Obviously, any judgment that is not a final judgment may be revised prior to the entry of a final judgment. However, that is not the criteria to use to determine whether a final judgment should be entered under Rule 54.02. In this case, the trial court has ruled that the complaint fails to state a cause of action against these defendants. If plaintiffs have a cause of action against these defendants, they should allege the cause of action and not depend upon the development of any facts in the further trial of the case as to the co-defendants to supply any missing allegations. In this case, there was no just reason for delay in the entry of a final judgment, and the trial court correctly did so.

Accordingly, the judgment of the trial court dismissing plaintiffs' complaint as to defendants Ticor and Sovran is affirmed and this case is remanded to the trial court for such further proceedings as may be necessary. Costs of appeal are assessed against the appellants.

TOMLIN, P.J., (Western Section), and HIGHERS, J., concur.