IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

_____

**JAMES W. HUNT,**

    Appellant,

Vs.

Sumner Circuit No. 16278-C
C.A. No. 01A01-9705-CV-00199

**WALTER A. TANGEL,**

    Appellee.

**FILED**

**December 19, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

FROM THE SUMNER COUNTY CIRCUIT COURT
THE HONORABLE THOMAS GOODALL, JUDGE

James L. Harris of Nashville
For Appellant

J. Russell Farrar and Paul D. Caver, Jr.; Farrar & Bates
For Appellee

*AFFIRMED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HEWITT P. TOMLIN, JR., SENIOR JUDGE**

This is a defamation case. James Hunt appeals the order of the trial court dismissing his complaint for failure to state a claim.

The pertinent allegations of the complaint are as follows: James Hunt was employed as

a police officer with the Gallatin Police Department. On October 15, 1996 Officer Hunt and his partner responded to a domestic dispute. The officers warned one of the parties, Mr. Stanfield, who was "highly intoxicated," that if he left his home he could be charged with public drunkenness and that he should "sleep it off." The officers were later called back to the premises, and officer Hunt was forced to subdue the suspect with pepper spray while making the arrest. Mr. Stanfield's girlfriend asked the officers if Mr. Stanfield could leave his wallet at the residence because she did not want him taking his money to jail. Officer Hunt found Mr. Stanfield's wallet, removed his license, and handed the wallet to the girlfriend. Officer Hunt was later accused of stealing $400 from the wallet.

Defendant-appellee, Walter Tangel, Chief of Police, insisted that officer Hunt take a polygraph as part of the investigation into the incident. Officer Hunt stated that he had researched the testing process and that "even someone honest only had a fifty percent chance of passing." He refused to take the polygraph test and handed in his resignation, stating that he could not work for a leader who did not believe in him. Chief Tangel notified Hunt that he was suspended with pay pending completion of the investigation. The alleged defamation occurred during a subsequent roll call when Chief Tangel said to all officers present that "if you're wondering why Officer Hunt is not here, there were allegations that Officer Hunt had taken some money. I don't think he is guilty. However, he doesn't work here anymore and has resigned. . . . You make up your own mind what happened." Plaintiff asserts that defendant's statements implied that plaintiff was guilty of theft because he refused a polygraph test, and because he resigned.

The only issue before this Court is whether the trial court erred in granting defendants' motion to dismiss plaintiff's complaint pursuant to Rule 12.02(6), Tenn. R. Civ. P., for failure to state a claim upon which relief can be granted.

Plaintiff-appellant asserts that through innuendo and his sarcastic tone, Chief Tangel insinuated that Officer Hunt was guilty of the theft, thus defaming him. Officer Hunt asserts that a reasonable jury could construe the Chief's statements as defamatory and that it was error to dismiss his complaint for failure to state a claim on which relief could be granted.

In *Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128 (Tenn. App. 1990), this Court said:

2

A motion to dismiss pursuant to Rule 12.02(6), Tenn. R. Civ. P., for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure and, thus, is a test of the sufficiency of the leading pleading. *Cornpropst v. Sloan*, 528 S.W.2d 188, 190, 93 A.L.R.3d 979 (Tenn. 1975). Such a motion admits the truth of all relevant and material averments contained in the complaint but asserts that such facts do not constitute a cause of action. *Cornpropst*, 528 S.W.2d at 190. A complaint should not be dismissed upon such motion "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Fuerst v. Methodist Hospital South*, 566 S.W.2d 847, 848 (Tenn. 1978). In considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court should construe the complaint liberally in favor of the plaintiff taking all of the allegations of fact therein as true. *Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn. 1975).

*Humphries v. West End Terrace, Inc.*, 795 S.W.2d 128, 130 (Tenn. App. 1990).

On appeal, issues raised by a Rule 12.02(6) motion to dismiss are questions of law that are reviewed *de novo* with no presumption of correctness. *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn. 1996).

To sustain a cause of action for defamation, the plaintiff must prove that a false and defamatory statement was made concerning the plaintiff. *Stones River Motors, Inc. v. Mid-South Publishing Co.*, 651 S.W.2d 713, 717 (Tenn. App. 1983). Whether the statement was, in fact, understood in its defamatory sense by those who heard it is a question of fact for the jury. However, the preliminary determination of whether the statement is *capable* of being so understood is a question of law for the court. *Memphis Publ'g Co. v. Nichols*, 569 S.W.2d 412, 419 (Tenn. 1978).

> In determining whether the published words are reasonably capable of [a defamatory] meaning, the courts must look to the words themselves and are not bound by the plaintiff's interpretation of them. If the words do not reasonably have the meaning the plaintiff ascribes to them, the court must disregard the [plaintiff's] interpretation.

3

*Stones River Motors*, 651 S.W.2d at 719.

Mr. Hunt asserts that although the statement made by Chief Tangel at roll call was true, the Chief's sarcastic tone rendered it defamatory by innuendo. In support, Plaintiff cites Prosser for the proposition that "[t]he form of the language used is not controlling, and there may be defamation by means of a question, an indirect insinuation, an expression of belief or opinion, or sarcasm or irony." William A. Prosser, The Law of Torts § 111 at 746 (4th ed. 1971) (footnotes omitted). Our review of Prosser and the cases cited therein, leads us to the conclusion that Prosser was referring to situations where actionable defamation may occur through sarcasm, insinuation, and the like, when the truth is twisted by either omitting relevant facts and circumstances, or alluding to "facts" and circumstances that do not exist. The classic Tennessee case on point is *Memphis Publishing Co. v. Nichols*, 569 S.W.2d 412 (Tenn. 1978). In *Nichols*, the *Memphis Press-Scimitar* published an article stating that Mrs. Nichols had been shot "after the suspect arrived at the Nichols home and found her husband there with Mrs. Nichols." Although true, the Tennessee Supreme Court held that this statement could be defamatory because the story failed to mention that several others, including Mr. Nichols, were present at the time. Without this important fact, the article implied that Mrs. Nichols was having an adulterous affair with the suspect's husband. The Court held that: "Truth is available as an absolute defense [to a charge of defamation] only when the defamatory meaning conveyed by the words is true." *Nichols,* 569 S.W.2d at 420.

Plaintiff also quotes from the case of *Smith v. Fielden*, 205 Tenn. 313, 326 S.W.2d 476 (1959), wherein the Tennessee Supreme Court addressed the effect of "innuendo":

> If the words are not actionable *per se*, or are ambiguous, the relationship to the person's calling may be shown by innuendo showing the surrounding circumstances giving the intended meaning to the words with reference to the calling; but the innuendo cannot enlarge or restrict the natural meaning of words, introduce new matter, or make certain that which is uncertain, or render a publication actionable *per se* if it is not otherwise so actionable. 53 C.J.S. Libel and Slander § 162(b), p. 250.
>
> In Fry v. McCord Bros., supra, 95 Tenn. at page 685, 33 S.W. at page 570, quoting from Newell on Defamation, the limitation is expressed in these words:
>
> > "In such cases the words are said to require an innuendo; that is, a statement of circumstances which give to the words a signification and

meaning which they do not have on their face, but which cannot enlarge, extend, or change the sense of the words.

*Fielden*, 326 S.W.2d at 480.

We fail to see how this quote supports plaintiff's contention that his complaint states a cause of action. The "innuendo" referred to was a statement required in a pleading at common law for actions "based on words not defamatory per se to connect the defamatory matter with other facts and circumstances sufficiently expressed before, for the purpose of showing the meaning and application of the charge." 53 C.J.S. *Libel and Slander* § 131 (1987). In other words, as in the *Nichols* case discussed *supra*, the "innuendo" explains the facts and circumstances which render a seemingly innocuous statement defamatory in light of the extrinsic facts. However, as stated above, the innuendo cannot "enlarge or restrict the natural meaning of words."

Plaintiff asserts that Chief Tangel's truthful statement becomes defamatory when viewed in light of the fact that Mr. Hunt had refused to take a polygraph test before he resigned. If this were an exculpatory fact omitted by Chief Tangel, we might be inclined to agree. However, if anything, omission of this fact is favorable to Mr. Hunt. In essence, the Plaintiff would have this Court hold that any plaintiff could state a cause of action by alleging that a statement was made in a sarcastic tone of voice, or that the speaker rolled his eyes while making the statement, "[N]o artificial and unreasonable construction placed upon innocent words by the evil-minded can add a defamatory meaning not fairly to be found in the light of the circumstances." Prosser, § 111 at 747. In this case the spoken words were truthful and non-defamatory.

The order of the trial court dismissing the Plaintiff's complaint is affirmed. Costs of appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**


_____
**ALAN E. HIGHERS, JUDGE**


_____
**HEWITT P. TOMLIN, JR.**
**SENIOR JUDGE**