IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 16, 2003 Session

## FORREST L. WHALEY & MARGARET ANN WHALEY v. FIRST AMERICAN TITLE COMPANY OF MID-WEST

**Direct Appeal from the Circuit Court for Shelby County**
**No. 94890 T.D.     Rita L. Stotts, Judge**

---

**No. W2002-01940-COA-R3-CV - March 30, 2004**

---

This case involves a claim under a title insurance policy. Plaintiffs purchased a residence located on a two acre lot, which, they later discovered, had been improperly subdivided from a preexisting 74 acre tract. As a result of the improper subdivision of their lot, Plaintiffs are unable to obtain a building permit to construct any improvements upon the property. Plaintiffs then filed a claim under their title insurance policy with Defendant. The claim was denied, and the Plaintiffs subsequently filed suit. After considering pleadings, affidavits, and deposition transcripts, the lower court granted Defendant's motion for summary judgment, finding as a matter of law that the policy at issue does not cover the improper subdivision of land. For the following reasons, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Richard M. Carter, Curt R. Soefker, Memphis, TN, for Appellants

Michael C. Patton, Thomas F. Barnett, Memphis, TN, for Appellee

**OPINION**

**Facts and Procedural History**

On August 28, 1985, Jim Ann Perkins ("Mrs. Perkins") applied for and received a building permit to construct a residence on her 74 acre tract of land in Shelby County, Tennessee. Two months later, Mrs. Perkins transferred a two acre portion, which included the site for the residence, to her daughter and son-in-law, Terry and Albert Beshires (collectively "Beshires"). Then, on December 12, 1985, Mrs. Perkins transferred an additional two acres, adjoining the first two acre

parcel, to the Beshires. On May 27, 1988, Forrest and Margaret Whaley (collectively "Plaintiffs") purchased the original two acre parcel, containing the residence, from the Beshires for $125,000. Plaintiffs subsequently purchased a title insurance policy from First American Title Insurance Company of the Mid-West ("Defendant") that insured, among other things, against unmarketability of the title to the property.

In 1995, Plaintiffs discovered that their residence sat on a lot subdivided in violation of section 105(c) of the Subdivision Regulations of Memphis and Shelby County, which requires the approval of the regional planning commission prior to the division of land into parcels of four acres or less. As a result of the improper subdivision, neither Plaintiffs, nor any subsequent purchaser, can obtain a building permit for construction or improvements on the property. On August 13, 1997, Plaintiffs advised Defendant that they believed the improper subdivision gave rise to a claim under their title insurance policy. Defendant denied the claim in two letters, dated September 10, 1997 and May 15, 1998. Plaintiffs disagreed with the denial of their claim, and subsequently filed suit for breach of contract and negligence in Shelby County Circuit Court on May 26, 1998.

On September 2, 1998, Defendant filed a motion to dismiss or, alternatively, for summary judgment, alleging that, as a matter of law, the title insurance policy does not protect against the improper subdivision of Plaintiffs' property. Defendant maintained that title insurance policies only insure legal ownership of property, not its economic value, and that the Plaintiffs clearly own the property at issue free of any competing claims of ownership. It also alleged that exception 1(a)(iii) of the policy specifically excludes coverage for damages arising from any division of the property. Plaintiffs responded with their own motion for partial summary judgment, arguing that the policy does, as a matter of law, insure against damages arising from the improper subdivision. In December 1999, the trial court conducted a hearing on the two motions. The lower court denied both motions, finding that genuine issues of material fact still remained. On February 26, 2001, following a year of additional discovery, Defendant renewed its motion for summary judgment. On March 1, 2001, Plaintiffs likewise renewed their motion for summary judgment. The trial court, on February 15, 2002, granted Defendant's motion for summary judgment, stating that "[t]he court cannot find as a matter of law that the Whaley's claim should have been covered under the terms of the insurance contract at issue. It appears that the purpose of the title policy was to address issues relating to legal ownership not value." Plaintiffs filed a motion for reconsideration on March 8, 2002, which the lower court denied on August 7, 2002. As part of its order denying Plaintiffs' motion, the lower court also certified the dismissal of the claims against Defendant as a final judgment. Plaintiffs then timely filed the instant appeal, challenging the ruling of the trial court.

**Issues on Appeal**

Plaintiffs raise the following issues, as we perceive them, for our consideration:

I.      Whether the trial court erred by granting summary judgment to Defendant on Plaintiffs' breach of contract claim.

A. Whether the trial court erred in finding that the scope of the policy extends only to legal ownership of the Plaintiffs' property, and not to its value.

B. Whether the trial court erred by failing to find that exclusion 1(a)(iii) of the policy is inapplicable where notice of a defect in title is apparent in the chain of title.

II. Whether the trial court erred by granting summary judgment to Defendant on Plaintiffs' negligence claims.

## Standard of Review

In *Staples v. CBL & Associates, Inc.*, 15 S.W.3d 83 (Tenn. 2000), the Tennessee Supreme Court set forth the standards governing an appellate court's review of a grant of summary judgment:

> Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion; *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).

*Staples*, 15 S.W.3d at 88.

## Law and Analysis

### I. Breach of Contract Claim

Plaintiffs allege that the trial court erred in granting Defendant summary judgment as to their breach of contract claim. They allege two bases of error, each relating to the scope of coverage afforded by the title insurance policy at issue. We will address each alleged basis in turn.

### General Scope of Policy

In its order granting summary judgment to Defendant, the trial court found that "[i]t appears that the purpose of the title policy was to address issues relating to legal ownership not value." The court then found, as a matter of law, that Plaintiffs were not entitled to recovery under the policy because there was no dispute that Plaintiffs held the property free of any competing claims of ownership. Plaintiffs disagree with this characterization of the policy's scope. They maintain that

-3-

this represents an overly technical interpretation of the policy that violates the rules governing construction of an insurance policy. Specifically, Plaintiffs emphasize the rule that ambiguous terms in an insurance contract are to be construed in favor of the insured. *Sturgill v. Life Ins. Co. of Ga.*, 465 S.W.2d 742, 744 (Tenn. Ct. App. 1970). They argue that there is nothing on the face of the policy that limits its coverage to issues of legal ownership, and that any ambiguous terms in the policy must be construed to favor the insured. Plaintiffs contend that, under this approach, the improper subdivision of their property constitutes a defect in the title or, in the alternative, renders their title unmarketable. Plaintiffs argue, accordingly, that their damages fall within the policy's scope of coverage[1] and that they are entitled to recovery. We respectfully disagree.

Title insurance policies are to be interpreted under the same rules of construction as any other contract. *Humphreys v. W. End Terrace, Inc.*, 795 S.W.2d 128, 133 (Tenn. Ct. App. 1990) (citing *Swanson v. Mid-South Title Ins. Corp.*, 692 S.W.2d 415, 419-20 (Tenn. Ct. App. 1984)). It is the duty of the court to interpret the contract as written, even those terms which may seem harsh or unjust, in the absence of fraud or mistake. *Humphreys*, 795 S.W.2d at 133 (citing *E.O. Bailey & Co. v. Union Planters Title Guar. Co.*, 232 S.W.2d 309, 314 (Tenn. Ct. App. 1949)). As noted by Plaintiffs, ambiguous terms in an insurance contract will be construed most favorably to the insured. *Sturgill*, 465 S.W.2d at 744. In the instant case, the only possible ambiguity involves technical terms such as "defect in title" and "unmarketability of title," which involve legal concepts that may be unfamiliar to average consumers such as Plaintiffs. However, language in a contract is not rendered ambiguous simply because it happens to be technical or complex to the layman. *Humphreys*, 795 S.W.2d at 133 (citing *Bartlett v. Philip-Carey Mfg. Co.*, 392 S.W.2d 325, 328 (Tenn. 1965)). Consequently, we do not find the title policy contains any ambiguous terms. We will, therefore, enforce the contract as it is written, without any preference for an interpretation that favors the insured. This requires us to determine whether the improper subdivision of the property in question falls within one of the coverage provisions relied upon by Plaintiffs. These provisions, as stated earlier, extend coverage to those losses arising from a defect in the title or unmarketability of the title.

The lower court found that the improper subdivision does not constitute a defect in title or an unmarketable title, because those concepts concern issues of legal ownership, while an improper subdivision pertains to the value of property. We agree. It does not appear that a Tennessee court has yet addressed this precise issue, but our conclusion is supported by the weight of other jurisdictions and treatises that have covered this issue. "Title refers to the legal ownership of a property interest so that one having title to a property interest can withstand the assertion of others claiming a right to that title. But title to property does not characterize the property itself as valuable, merchantable, or even usable." *Haw River Land & Timber Co., Inc. v. Lawyers Title Ins. Corp.*, 152 F.3d 275, 278 (4th Cir. 1998) (citations omitted); *see also* D. Barlow Burke, Law of Title Insurance § 3.2.3 (2d ed. 1993) ("An insured can have perfect legal title, worth nothing."). In the instant case,

---

[1] The policy includes coverage for losses arising from "any defect in or lien or incumbrance on the title . . . [and] unmarketability of the title . . . ."

-4-

there is no dispute that Plaintiffs own their property free of any competing claims of ownership and free of liens or encumbrances. We find, therefore, as a matter of law, that the improper subdivision does not constitute a defect in title.

Likewise, the improper subdivision of Plaintiffs' property does not render the title unmarketable. Instead, it constitutes a defect in the physical condition of the property that makes the property economically difficult to sell. Several courts have addressed the distinction between economic lack of marketability and unmarketability of title, including the Georgia Court of Appeals. In *Chicago Title Ins. Co. v. Investguard, Ltd.*, 449 S.E.2d 681 (Ga. Ct. App. 1994), the difference between the two doctrines was succinctly stated:

> [T]hose courts which have addressed the issue of whether defects in the physical condition of the property are covered by title insurance have generally held that such defects do not constitute unmarketability of title. *See Chicago Title Ins. Co. v. Kumar*, 506 N.E.2d 154 (1987); *Title & Trust Co. of Florida v. Barrows*, 381 So. 2d 1088 (Fla. Ct. App. 1979); *Hocking v. Title Ins. & Trust Co.*, 234 P.2d 625 (Cal. 1951); *Sperling v. Title Guar. & Trust Co.*, 236 N.Y.S. 553 (N.Y. 1929), aff'd, 170 N.E. 163 (1930). We agree with the above-cited decisions that a difference exists between economic lack of marketability, which relates to physical conditions affecting the use of the property, and title marketability, which relates to defects affecting legally recognized rights and incidents of ownership. *See Kumar*, 506 N.E.2d at 157. "One can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable." *Hocking*, 234 P.2d at 629.

*Chicago Title Ins. Co.*, 449 S.E.2d at 683. We agree with the foregoing analysis differentiating economic unmarketability from title unmarketability, and we find that Plaintiffs' title has not been rendered unmarketable by reason of the improper subdivision of the property at issue. Although it is unfortunate that Plaintiffs are unlikely to realize the full use and value of their property, they simply have not alleged facts which indicate any deficiency in their title, as they enjoy undisputed legal ownership of the property. Accordingly, we find that Plaintiffs' title policy with Defendant does not insure against losses occasioned by the improper subdivision of property. We note that, as a consequence of this finding, the applicability of exclusion 1(a)(iii) is rendered moot. As such, we decline to address that issue.

## II. Negligence Claim

In their final issue on appeal, Plaintiffs argue that the lower court erred in granting Defendant summary judgment as to their negligence claim. Under Tennessee law, a plaintiff must prove each of the five elements that comprise a negligence claim:

> (1) a duty of care owed by the defendant to the plaintiff; (2) conduct of the defendant that fell below the applicable standard of care, amounting to a breach of the duty

owed to the plaintiff; (3) an injury or loss sustained by the plaintiff; (4) causation in fact; and (5) proximate, or legal, cause.

*Burroughs v. Magee*, 118 S.W.3d 323, 327-28 (Tenn. 2003). According to Plaintiffs, Tenn. Code Ann. § 56-39-129 (2003) creates the applicable duty of care, requiring a title insurer to conduct a reasonable examination of the title to a property and to disclose any defects that may be found. Plaintiffs claim that Defendant breached this duty by failing to disclose the improper subdivision and that this breach constitutes negligence. We disagree.

Tenn. Code Ann. § 56-39-129 provides that "[n]o policy or contract of title insurance shall be issued until and unless the title insurance company has caused to be conducted a reasonable search and examination of the title." Assuming, *arguendo*, that this language places a duty of care upon a title insurer in the conduct of a title examination, Plaintiffs have not alleged any facts that would constitute a breach. As we have already noted, title is a concept referring to legal ownership rather than value, merchantability, or use. *See Haw River Land & Timber Co., Inc. v. Lawyers Title Ins. Corp.*, 152 F.3d 275, 278 (4th Cir. 1998). It naturally follows that the duty of a title insurer, in conducting a title search, would only extend to the discovery and disclosure of those defects in the chain of title that affect ownership. Here, it is undisputed that Plaintiffs hold their property free of any competing claims of ownership and, further, that no defects exist in the chain of title that affect ownership. The fact that the property is not as valuable as Plaintiffs' initially believed, due to certain use restrictions, does not affect the quality of their ownership. As a result, Plaintiffs cannot show that Defendant breached its duty of care, and their negligence claim must fail.

## Conclusion

For the foregoing reasons, we affirm the judgment of the lower court. Costs of this appeal are taxed to the Plaintiffs, Forrest and Margaret Whaley, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE