IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 4, 2004 Session

## OFFICE FURNITURE AND RELATED SERVICES INC., ET AL v. UNITED CONSTRUCTION CORPORATION

**Appeal from the Chancery Court for Davidson County**
**No. 99-2994-I     Irvin Kilcrease, Chancellor**

––––––––––––––––

**No. M2003-02126-COA-R3-CV - Filed February 16, 2005**

––––––––––––––––

In this appeal, a roofing contractor seeks to reverse the trial court's finding that it breached express and implied warranties and violated the Tennessee Consumer Protection Act. The contractor argues that its agreement was simply to perform insurance repair work and that the trial court erred in admitting parol evidence to expand the parties' agreement. There is sufficient evidence to support the trial court's finding that appellant violated its warranty. We affirm that finding, but reverse the trial court's finding that the contractor violated the Tennessee Consumer Protection Act.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, and Reversed in Part**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

James D. Kay, Jr., Christopher M. Jones, Nashville, Tennessee, for the appellant, United Construction Corporation of Nashville.

James S. Higgins, Jonathan A. Street, Nashville, Tennessee, for the appellee, Office Furniture and Related Services and Jesse Mayo.

**MEMORANDUM OPINION**[1]

The tornado that struck Nashville in April of 1998 significantly damaged the tin roof of the warehouse owned by Jesse Mayo and leased to Office Furniture and Related Services, Inc. ("Office Furniture"). The warehouse was seventy-five years old at the time of the storm and was being used by Office Furniture to store and repair furniture. There is no dispute that the roof was in bad condition before the tornado.

The damage to the warehouse caused by the tornado was significant, tearing off approximately seventy-five (75%) percent of the tin on the roof. Office Furniture's insurance company, Hartford Insurance Company, contacted Mike Apple, president of United Construction Company ("United"), to inspect the damage and provide an estimate to repair the roof. According to United, it was instructed by the insurance company to provide an estimate of the repairs necessary to put the roof back in the condition it was in before the tornado. At this time, United gave Office Furniture and its insurer an estimate totaling Ninety-Nine Thousand Seven Hundred Eighty-One Dollars ($99,781) to perform only that repair work necessary to put the roof in its pre-tornado condition. United also provided Office Furniture with Notes and Addendum further describing the work. This work was to be paid for by the insurance company.

The portion of the transaction which is primarily the subject of this dispute is what the parties refer to as "change order work," which is in addition to the insurance repair work. Both parties agree Mr. Mayo wanted United to repair the roof beyond the tornado damage. Since the change order work exceeded the insuror's responsibility, Mr. Mayo negotiated with United to perform this work and paid for it. The terms governing the change order work are in dispute. According to United, this change order work simply required United to install additional metal on the roof where metal did not exist before and install some 2x4(s) so the metal could be attached. Mr. Mayo, on the other hand, said United represented that this additional change order work would result in a good, solid, leak free roof. The change order work totaled Twenty-Six Thousand Eight Hundred ($26,800) Dollars. There is no document signed by Mr. Mayo or Office Furniture that describes the change order work. Since this work represented an improvement to the roof, the insurance company did not participate in negotiations or in the cost of the change order work.

United completed all the repairs to the roof totaling approximately One Hundred, Twenty Six Thousand Five Hundred Dollars ($126,500) and provided the following warranty:

---

[1]Tenn. R. Ct. App. 10 states:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This is to certify that United Construction Corp. will guarantee a job against defects in materials or workmanship for the period of two (2) years from date. Your job has been built with quality materials and erected by the most skilled craftsman available.

Just days after United completed the repairs, the roof began to leak. Office Furniture was forced to use 40-50 gallon barrels to catch the rainwater. Initially, United was responsive to Office Furniture's calls to come back and patch up various leaks, but after four or five visits, United stopped responding. According to Office Furniture, the leaks caused damage to furniture in the warehouse totaling between Two to Five Thousand Dollars.

Office Furniture and Mayo filed suit against United alleging breach of contract, negligence, and violation of the Tennessee Consumer Protection Act ("Act"), Tenn. Code Ann. § 47-18-101 *et seq.* A trial on the merits without a jury was held on April 28, 2003. In a Memorandum Opinion and Final Order, the trial court found United breached its contract by violating the warranty of workmanlike performance and made negligent misrepresentations under the Act. The court found that the plaintiffs were entitled to recover the amount paid United for the roof ($125,000), damage to furniture caused by the leaks ($2,000), and attorney's fees. The court found that United had not acted willfully, thus avoiding liability for treble damages under the Act, and that United could offset the amount owed by Office Furniture for unpaid material ($1,372.28).

United appeals the trial court's findings based on the premise that United agreed only to repair the roof to its pre-tornado condition. United argues that it was never the parties' agreement to repair the roof such that it would not leak. For this reason, according to United, the court erred both in finding that United was liable for breach of express and implied warranties and in finding that it violated the Act. Alternatively, in the event United is found liable, United argues that the correct measure of damage was not the amount paid United to repair the roof.

## I. STANDARD OF REVIEW

We review this case *de novo* on the record with a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Brooks v. Brooks*, 992 S.W.2d 403, 404 (Tenn. 1999). No presumption of correctness attaches to the trial court's decisions regarding questions of law. *Wilson v. Wilson*, 984 S.W.2d 898, 900 (Tenn. 1998).

## II. BREACH OF CONTRACT

United basically claims that the trial court erred in finding a breach of warranties since United never agreed to produce a leak proof roof. According to United, the court erred in allowing parol evidence to expand the terms of the agreement between the parties to result in an agreement by United to produce a leak proof roof. United argues that parol evidence is not admissible since the parties' agreement was reduced to writing in the form of the estimate, notes, work authorization and the change order.

The only document, however, actually executed by Office Furniture or Mr. Mayo is the work authorization which contains no description of the actual work, pricing, method of payment, or time limitations on performance. The work authorization refers only to work authorized by the insurance company, *i.e.*, an "agreed scope of work" to be approved by the insurance company and a statement that United will restore the property to its pre-damage condition. Consequently, it does not apply to the change order work. The purpose of the work authorization was to allow United access to insurance proceeds and to allow United to initiate work. Office Furniture and Mr. Mayo signed no written instrument governing the change order work. At the very least, there is ambiguity in the terms of the agreement between the parties. When an ambiguity exits in a contract, parol evidence is admissible to explain the actual agreement. *Jones v. Brooks*, 696 S.W.2d 885, 886 (Tenn. 1985).

Mr. Mayo testified about conversations with Mr. Apple of United wherein Mr. Mayo agreed to pay for the extra change order work so that the repair would result in a complete, good solid roof that would not leak. According to Mr. Mayo, Mr. Apple told him that United's work would result in a roof that would have a two year warranty against leaks. Mr. Mayo testified that he never received any disclaimer or limitation from United about the repair work or the warranty. It was explained by Mr. Mayo that he would never have agreed to pay so much for a temporary fix.

While United disagrees with the substance of the oral agreements and representations related by Mr. Mayo, once having found them admissible, the question then becomes one of credibility. The Chancellor who heard the proof apparently placed greater reliance on the credibility of Mr. Mayo, and there is not sufficient contradictory evidence to question this determination.

Even if parol evidence was not admissible and the agreement was limited in scope to repairing the roof to its pre-tornado condition, there is sufficient evidence to support the court's finding. It is not disputed that United provided the plaintiffs with an express guaranty "against defects in material or workmanship." At trial, the plaintiff put on expert testimony in the form of Mr. Rankhorn who owns ABCO Roofing and has been in the roofing business for twenty (20) years. Mr. Rankhorn testified that the roof installed by United was not done correctly and did not meet industry standards. Mr. Rankhorn testified that the metal roofing was not attached properly and at times there were holes in the roof where the screws were not attached to anything at all. Mr. Rankhorn testified that the metal roof did not have proper sloping so water would pool and leak. Mr. Rankhorn also testified that the flashing was not done properly. In his opinion, even if the agreement was simply to repair the roof to its pre-tornado condition, United did not perform that limited work according to industry standards. According to Mr. Rankhorn, the value of the roof installed by United was "pretty much" zero.

In addition to the testimony provided by the plaintiffs' expert regarding poor workmanship, there is also evidence in the record that the roof leaked more after the work done by United than before the tornado struck. Therefore, even assuming that United is correct and that the only agreement they made was to install a roof to meet the pre-tornado condition, there is ample evidence in the record to show that workmanship was poor, thus violating the express warranty.

Accordingly, we find that under either of two alternative theories, the trial court correctly held that United breached its agreement with Office Furniture and Mr. Mayo.

## III. DAMAGES

United maintains that the amount of damages awarded were excessive. It is a tenet of basic contract law that the purpose of assessing damages in a breach of contract action is to place the plaintiff in the same position he would have been in had the contract been performed. *Wilhite v. Brownsville Concrete Co.*, 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990); *Action Ads, Inc. v. William B. Tanner Co., Inc.*, 592 S.W.2d 572, 575 (Tenn. Ct. App. 1979). If the defects in the workmanship are so substantial that performance of the contract is, in effect, worthless, the contractor must pay the other party the cost of having the job redone. *Wilhite*, 798 S.W.2d at 775. As discussed earlier, the court heard expert testimony that the value of the roof repairs performed by United was "pretty much" zero. Based on this testimony, the court was well within its discretion to award the value of the repair to the plaintiff and to award a sum to compensate Office Furniture for damaged furniture.

## IV. CONSUMER PROTECTION ACT

United argues the trial court erred in its holding that United violated the Tennessee Consumer Protection Act by negligently misrepresenting the type of roof repair that United would perform. The court stated that the allegation was that United had made assurances as to the quality of the work performed when it knew that the work actually provided did not have those qualities, citing the plaintiffs' trial brief. On appeal, Office Furniture and Mr. Mayo argue that United's conduct amounted to violations of Tenn. Code Ann. §§ 47-18-104(19) (representing that a guarantee or warranty confers or involves rights or remedies that it does not have or involve), § 47-18-104(5) (representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have), and § 47-18-104(7) (representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another).

However, the complaint's claims based on an alleged violation of the Act are stated in one paragraph:

> The repair work which was performed by Defendant in the spring of 1999 was necessitated by the Defendant's improper installation of the roof and such repair work should have been performed by Defendant pursuant to the aforementioned implied and express warranties. Defendant's charge for such work was a knowing, willful and/or intentional attempt to conceal the original improper installation of the roof and was an unfair and/or deceptive act or practice prohibited by the Tennessee Consumer Protection Act and thus a violation of Section 47-18-104 of Tennessee Code Annotated.

Obviously, the allegation in the complaint was based on a different factual predicate from the findings of the court and the plaintiffs' arguments on appeal. Tennessee Consumer Protection Act claims must be stated with the particularity of common-law fraud claims under Tenn. R. Civ. P. 9.02. *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275-76 (Tenn. Ct. App. 1999); *Humphrey v. West End Terrace, Inc.*, 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990).

Additionally, although a breach of contract claim and a Consumer Protection Act claim may arise from the same course of conduct, they are separate and distinct causes of action, each with its own separate elements and defenses. *Lien v. Couch*, No.M2002-01625-COA-R3-CV, 2004 WL 343905, (Tenn. Ct. App., Feb 23, 2004); *see also, Morris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992).

As we held in *Hall v. Hamblen*, No. 2004 WL 1838180 (Tenn. Ct. App. Aug. 16, 2004), (no Tenn. R. App. P. 11 application filed ), breach of contract and violation of the Act are two different causes of action, and existence of one does not necessarily establish the existence of the other. *Id*. at *4. In order to be successful under the Act, it must be proven that "there was some deception, misrepresentation or unfairness, regardless of any breach of contract." *Id*., citing *Hamer v. Harris,* No. 2002 WL 31469213 (Tenn. Ct. App. Nov. 6, 2002) (perm. app. denied Feb. 18, 2003). A breach of contract or warranty is not in and of itself a deception, misrepresentation or unfairness under the Act.

We conclude that neither the findings of the trial court nor a review of the proof reveals a misrepresentation or unfair or deceptive practice. There was a disagreement regarding the scope of work and warranty between the parties that is contractual in nature. We are not able, however, to find deception or unfair action. For that reason, the trial court's finding of a violation of the Act is reversed. This holding has no impact on liability or damages for breach of contract. It does, however, eliminate the only stated basis for the award of attorney's fees. Consequently, the trial court's award of attorney's fees to Office Furniture is reversed.

### V. CONCLUSION

In conclusion, we affirm the trial court's finding regarding the breach of contract claim but reverse the trial court's finding of a violation of the Act and award of attorney's fees.. Costs are taxed equally between the appellant, United Construction Corporation of Nashville, and appellees, Office Furniture and Related Services and Jesse Mayo, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE